REVISED, June 25, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30443

_____

WILMORE GREEN, III; MARSHA W. GREEN,
on behalf of themselves and all
others similarly situated,

Plaintiffs-Appellants,

versus

LEVIS MOTORS, INC., ET AL.,

Defendants,

LEVIS MOTORS, INC., doing business as
Levis Mitsubishi; JOHN DOES, 1-10;
HANCOCK BANK OF LOUISIANA; ABC
INSURANCE; XYZ INSURANCE CO.,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Louisiana

_____

June 22, 1999

Before KING, Chief Judge, and REYNALDO G. GARZA and JOLLY, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

Wilmore and Marsha Green have sued their car dealer and the
bank that holds their retail installment contract for a violation
of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. The district
court granted summary judgment for both Levis Motors, Inc. d/b/a
Levis Mitsubishi (the car dealer) and Hancock Bank of Louisiana
(the holder of the installment contract). The district court erred
in granting summary judgment for Levis Motors, but correctly

granted summary judgment for Hancock.  We therefore reverse in part, affirm in part and remand for further proceedings.

I

The core facts in this case are not in dispute.  On or about August 31, 1995, (and this date is important), Wilmore and Marsha Green purchased a used car from Levis Motors.  To finance this purchase, the Greens entered a retail installment contract ("RIC") with Levis Motors.  As required by the Truth in Lending Act ("TILA"), the contract disclosed the "amount financed" and, in conjunction with the disclosure of this amount, purported to itemize an amount paid to the state of Louisiana for licensing fees.  See 15 U.S.C. § 1638(a)(2)(B)(iii) (West 1998).  The relevant portion of the contract reads as follows:

Itemization of Amount Financed

| | |
|---|---|
| (1) Cash Price | $ 11,332.34 |
| (2)  (a) Cash Downpayment | $    700.00 |
|      (b) Net Trade-In Allowance | $      n/a |
| (3) Unpaid Balance | $ 10,632.34 |
| * * * | |
| (5) Amount Paid to Public Officials For: | |
| * * * | |
|    (c) License Fee | $     40.00 |

The issues in this case surround the amount listed as "Paid to Public Officials For License Fee."  Although the RIC lists the amount paid to Louisiana as $40, the state only charged $22 for

-2-

licensing involved with the Greens' car. Levis Motors retained the $18 balance. Apparently, the practice of tacking on dealer charges to amounts paid to third parties is common in the automotive sales industry, and the balance retained is referred to as an "upcharge."

According to Levis Motors, the $40 amount was a standard licensing fee that it applied to the sale of all its cars. In some of the sales, the actual amount charged by Louisiana exceeded the $40 listed, and in others (such as the sale to the Greens) the state charged less than $40. (Louisiana bases its licensing fee on the sale price of the automobile and the length of time the license remains valid.) The Greens have alleged that Levis Motors violated the TILA because of the RIC's inaccuracy in disclosing the amount paid to third parties.

After executing the RIC with the Greens, Levis Motors assigned the contract to Hancock. Another provision of the RIC plays an important role in evaluating the potential liability of Hancock. That provision, which the FTC requires for all consumer credit contracts, see 16 C.F.R. § 433.2 (1998), states the following:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(This clause is referred to below as the "FTC clause.") The Greens sued both Levis Motors and Hancock for violating the TILA. The history of the various, relevant regulations and agency

interpretations is somewhat complex.  Therefore, we first turn to

the applicable code law before addressing the district court's

reasoning and the parties' arguments.

II

A

The statutory text upon which the Greens base their claim is

found in 15 U.S.C. § 1638(a)(2)(B)(iii):

> (a) Required disclosures by creditor
> For each consumer credit transaction other than under an
> open end credit plan, the creditor shall disclose each of
> the following items, to the extent applicable:
> ***
>> (2)(B) In conjunction with the disclosure of
>> the amount financed, a creditor shall provide
>> a statement of the consumer's right to obtain,
>> upon a written request, a written itemization
>> of the amount financed. . . . Upon receiving
>> an affirmative indication, the creditor shall
>> provide, at the time other disclosures are
>> required to be furnished, a written
>> itemization of the amount financed.  For the
>> purposes of this subparagraph, "itemization of
>> the amount financed" means a disclosure of the
>> following items, to the extent applicable:
>> ***
>> (iii) each amount that is or will be paid to
>> third persons by the creditor on the
>> consumer's behalf, together with an
>> identification of or reference to the third
>> person;

Instead of giving the Greens the option of requesting a written

itemization of the amount financed, Levis Motors decided to supply

this itemization automatically.[1]  An underlying issue in the

---

[1]12 C.F.R. Part 226, Supp. I, § 226.18(c)(1) specifically
allows creditors to provide an itemization as a matter of course,
without notifying the consumer of the right to receive it.

Greens' case is whether Levis Motors's retention of an upcharge, without notification to the Greens that the upcharge was included in the amount listed as paid to a third party, violates this statutory provision.

At the time the Greens and Levis Motors executed the RIC, the only relevant regulatory provisions offering any guidance were 12 C.F.R. 226.18(c)(iii) (a section within "Regulation Z," 12 C.F.R. 226), and 12 C.F.R. Part 226, App. H-3 ("model form"). These two regulatory enactments have not changed since the time of the RIC's execution (August 31, 1995). Neither the regulation nor the model form provide any further guidance--with any relevance to this case--than that already present on the face of § 1638(a)(2)(B)(iii). The regulation states:

> For each transaction, the creditor shall disclose the following information as applicable:
> ***
> (c) *Itemization of amount financed.* (1) A separate written itemization of the amount financed, including:
> ***
> (iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.[2]

12 C.F.R. § 226.18(c)(iii) (1999). Model form H-3 appears as follows:

---

[2]The following payees may be described using generic or other general terms and need not be further identified: public officials or government agencies . . . [This footnote is a part of the quoted regulation.]

```
Itemization of the Amount Financed of $ _____
$ _____     Amount given to you directly
$ _____     Amount paid on your account

Amount paid to others on your behalf
$ _____     to  [public   officials]   [credit bureau]
                [appraiser] [insurance company]
$ _____     to [name of another creditor]
$ _____     to [other]

$ _____     Prepaid finance charge
```

These were the only relevant materials promulgated by the Federal Reserve Board ("FRB") (which is charged with elaborating on the TILA's text, see 15 U.S.C. § 1604) at the time the Greens entered the RIC. Nevertheless, some of Levis Motors's and Hancock's arguments rely on FRB interpretations proposed and issued after execution of the RIC. A description of these materials follows.

B

In December 1995, the FRB staff proposed an official staff interpretation of § 1638(a)(2)(B)(iii). See Truth in Lending, 60 Fed. Reg. 62764, 62765, 62769 (1995) (proposed Dec. 7, 1995). This proposed interpretation provides the following:

> *Creditor-imposed charges added to amounts paid to others.* A creditor that offers an item for sale in both cash and credit transactions sometimes adds an amount (often referred to as an "upcharge") to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the creditor may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties.

-6-

Truth in Lending, 60 Fed. Reg. at 62769 (emphasis indicated by underlining added). The FRB never adopted this proposed interpretation. Instead, the FRB promulgated a somewhat more restrictive interpretation in April 1996:

> *Charges added to amounts paid to others.* A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. <u>Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."</u>

Truth in Lending, 61 Fed. Reg. 14952, 14956 (1996) (effective April 1, 1996) (referred to below as the "FRB official interpretation") (emphasis indicated by underlining added). The FRB's accompanying explanation explains why this officially adopted interpretation is more restrictive than its previously proposed counterpart:

> [The December, 1995 proposed interpretation] stated that a creditor could include in the "amount paid to others," any amount retained by the creditor without itemizing or noting this fact. Concern is raised about the appropriateness of such treatment under the TILA where a substantial portion of a fee categorized as "amounts paid to others," is in fact retained by the creditor. Accordingly, a sentence has been added to clarify that given the flexibility in itemizing the amount financed, creditors may reflect that they have retained a portion of the "amount paid to others" rather than disclosing the specific amount retained.

61 Fed. Reg. 14952, 14954 (1996).  After the April 1996, adoption of the official interpretation,[3] a handful of district courts (most within the state of Illinois) disagreed as to whether the FRB interpretation would allow creditors to lump the upcharge in with the fees paid to third parties--without informing the buyers that the creditor included an upcharge.[4]  Subsequently, the Seventh Circuit settled the intra-circuit controversy by reading the FRB's interpretation as requiring creditors either to itemize the upcharge separately or to include some language indicating that it may have listed the upcharge and the actual amount paid to third parties as one numerical value.  Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285-86 (7th Cir. 1997) (Posner, C.J.).

III

---

[3]Now codified at 12 C.F.R. Part 226, Supp. I, § 226.18(c)(1)(iii)-2 (1999).

[4]See, e.g., Gibson v. Bob Watson Chevrolet-Geo, Inc., No. 95-C-6661, 1996 WL 316975 (N.D. Ill. June 10, 1996) (holding that defendant does not violate TILA when it failed to disclose existence of an upcharge), rev'd, 112 F.3d 283 (7th Cir. 1997); Taylor v. Quality Hyundai, Inc., 932 F. Supp. 218 (N.D. Ill. 1996) (same), aff'd in part and rev'd in part, 150 F.3d 689 (7th Cir. 1998); Abercrombie v. William Chevrolet/Geo Inc., No. 95-C-3119, 1996 WL 251435 (N.D. Ill. May 8, 1996) (same); El-Mohammed v. Old Orchard Chevrolet-Geo, Inc., No. 96-C-3774, 1997 WL 106243 (N.D. Ill. Feb. 10, 1997) (same); Bambilla v. Evanston Nissan, Inc., No. 94-C-6818, 1996 WL 284954 (N.D. Ill. May 21, 1996) (holding that defendant violated TILA by failing to note the existence of an upcharge); Alexander v. Continental Motor Werks, Inc., 933 F. Supp. 715 (N.D. Ill. July 16, 1996) (same).

The Greens filed their TILA claims against Levis Motors and Hancock in May 1996.[5]  The Greens filed their action as a putative class action, but the district court granted summary judgment to both Levis Motors and Hancock before reaching a decision as to class certification.  In the claims asserted against Hancock, the district court issued summary judgment for Hancock based on a written opinion.  The court also granted summary judgment in favor of Levis Motors based on oral conclusions stated during a hearing on the motion for summary judgment.  In short, the district court first concluded that Hancock was not liable as an assignee of the RIC under 15 U.S.C.A. § 1641(a) (which governs assignee liability).  Furthermore, the court also concluded that the FTC clause did not have any effect in the context of TILA claims asserted against an assignee.  Finally, the court found that the TILA good faith safe harbor provision, 15 U.S.C.A. § 1640(f), shielded Levis Motors from liability for the alleged violations.  The district court did not, however, decide whether Levis Motors's conduct would have constituted a TILA violation if the safe harbor provision did not apply.

                                  IV

    This court reviews a trial court's grant of summary judgment <u>de novo</u>.  <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 431 (5th Cir. 1998).  Summary judgment should be granted when there is no genuine

---

[5]The Greens filed several other claims, but only the TILA claims are before us on appeal.

issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

A

Levis Motors argues that, irrespective of whether it has technically violated the TILA, the good faith safe harbor provision of that act, 15 U.S.C. § 1640(f), shields it from liability. Section 1640(f) states:

> No provision of this section . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board . . ., notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C.A. § 1640(f) (West 1998).  The district court agreed with Levis Motors, reasoning that the car dealer could not be charged with a violation of the TILA when such a divisive split occurred in the (Illinois) district courts after the FRB issued its official interpretation.

(1)

The Greens first argue that the district court erred because the FRB did not propose the interpretation that prompted the disagreement among the courts until <u>after</u> the Greens and Levis Motors executed the RIC.  Citing Fifth Circuit law, the Greens maintain that the safe harbor provided by § 1640(f) can only shield creditors who act in conformity with regulations or interpretations in existence at the time of the challenged disclosure.  See <u>Jones</u>

-10-

v. Community Loan & Investment Corp. of Fulton County, 544 F.2d 1228, 1232 (5th Cir. 1977); McGowan v. Credit Ctr. of North Jackson, Inc., 546 F.2d 73, 77 (5th Cir. 1977). The Greens further note that Levis Motors does not claim to have relied on any conflicting authority existing before the Greens entered their RIC.

(2)

Levis Motors makes two main arguments in response to the Greens. First, Levis Motors argues that it did act in conformity with the statutory, regulatory, and commentary provisions existing at the time of the RIC's execution. Specifically, Levis Motors maintains that it acted in conformity with model form H-3 and Official Comments 18(c)-2 and 18(c)-3.[6] The district court did not, however, rely on this particular argument in making its decision.

In its second argument, Levis Motors puts forth, and attempts to bolster, the reasoning of the district court. According to that reasoning, Levis Motors acted in good faith conformity with the official FRB interpretation issued in April 1996. Although this interpretation was not adopted until after execution of the Greens contract, Levis Motors maintains that it must have been acting in good faith because multiple courts split over how to read that interpretation: roughly half of the courts ruled that the FRB interpretation allowed creditors to combine upcharges with amounts

---

[6]See 12 C.F.R. § 226, Supp. I, § 226.18(c)-2,3 (1999).

paid to third parties without indicating to buyers that they were doing so; the other half of the courts ruled that the buyers must be informed. Levis Motors argues that with half of the courts going one way, and half going the other way, it should be entitled to the good faith safe harbor. Because the FRB adopted its interpretation <u>after</u> execution of the Greens' RIC, Levis Motors necessarily argues that one need not actually <u>rely upon</u> a regulatory interpretation in order to act "in good faith in conformity with" that interpretation.

(3)

Levis Motors cannot overcome a serious obstacle to its good faith argument: Binding Fifth Circuit precedent holds that a party cannot act "in good faith in conformity with" a regulation or interpretation that does not exist at the time of the disputed act (or omission).[7] For example, in <u>Jones</u>, this court dealt with a TILA claim in which the lenders executed their loans prior to the date the FRB amended a particular regulation. "Since these two lenders could not have relied upon the amendatory regulation at the time their loans were transacted, [this court] held that they were barred from reliance upon Section 1640(f)'s exculpatory language." <u>McGowan</u>, 546 F.2d at 77 (discussing <u>Jones</u>, 544 F.2d at 1231).

---

[7]The relevant Fifth Circuit cases (<u>Jones</u> and <u>McGowan</u>) deal with FRB regulations. However, Levis Motors has offered no good reason for treating official FRB interpretations differently from FRB regulations in this particular context.

Although Levis Motors holds the view that "Jones and McGowan are contrary to the plain language of § 1640(f),"[8] it does not provide any compelling argument for why those cases do not bind this court on the principle that a party cannot base its § 1640(f) defense on a regulation or interpretation that did not exist at the time of the transaction.[9]

In the alternative, Levis Motors argues that it acted in conformity with the model form (H-3) and FRB commentary existing at the time the parties executed the RIC. As is clear from the above description of model form H-3, however, that form does not indicate--in any way--that creditors can lump in upcharges with amounts paid to third parties without telling the buyers that they are doing so. Furthermore, the existing commentary that Levis Motors cites, 12 C.F.R. Part 226, Supp. I, § 226.18(c)-2,3, does

---

[8]Levis Motors thinks that Jones and McGowan are contrary to the plain language of § 1640(f) because the words "in conformity with" should not be read to mean "in reliance upon." As the cases constitute precedent binding on our panel, however, this argument carries no weight.

[9]Hancock, which, as an assignee, has an interest in supporting Levis Motors's defenses, tries to help with an argument stating that Jones and McGowan are no longer good law because Congress overruled those decisions when it simplified the TILA in 1980. We cannot see that the 1980 amendments changed § 1640(f) in any relevant respect. Furthermore, Hancock has not pointed to any relevant change in the regulations interpreting § 1640(f). In short, Jones and McGowan continue to bind us.

-13-

not aid Levis Motors.  For the sake of completeness, we set out the

(minimally) relevant text of those comments:[10]

> *18(c) Itemization of amount financed.*
> ***
> 2. *Additional information.* Section 226.18(c) establishes
> only a minimum standard for the material to be included
> in the itemization of the amount financed.  Creditors
> have considerable flexibility in revising or
> supplementing the information listed in § 226.18(c) and
> shown in model form H-3, although no changes are
> required.
> ***
> 3. *Amounts appropriate to more than one category.* When
> an amount may appropriately be placed in any of several
> categories and the creditor does not wish to revise the
> categories shown in § 226.18(c), the creditor has
> considerable flexibility in determining where to show the
> amount.  For example:
>
> • In a credit sale, the portion of the purchase price
> being financed by the creditor may be viewed as either an
> amount paid to the consumer or an amount paid on the
> consumer's account.
> ***

Neither the model form nor these FRB comments could be read as

offsetting the plain language of § 1638(a)(2)(B)(iii) or 12 C.F.R.

§ 226.18(c)(iii).  That plain language requires the itemization of

amounts paid to third parties.  By lumping the creditors' own

charges in with the amounts actually paid to third parties, and

failing to denote the conflation, the creditor fails to itemize or

disclose (under any ordinary understanding of those terms) the

---

[10]Levis Motors's decision not to quote or focus in on any
portion of these commentary paragraphs further highlights the
weakness of the arguments that rely upon them.

"amount that is or will be paid to third persons."  15 U.S.C.A. § 1638(a)(2)(B)(iii).[11]

We will reverse the district court's decision to shield Levis Motors from TILA liability under § 1640(f).  A complete reading of the statutory text, regulations, and commentary existing at the time of the relevant transaction mandates the conclusion that Levis Motors failed to conform in good faith with those authorities.  Furthermore, Levis Motors cannot rely on subsequently issued FRB interpretations to support its § 1640(f) defense.

B

As noted above, after the district court found the § 1640(f) defense applicable, it did not go on to decide whether the RIC actually violated the TILA.  Notwithstanding this fact, we have discretionary authority to decide the issue on this appeal.  See Singleton v. Wulff, 428 U.S. 106, 120-21 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); Creel v. Johnson, 162 F.3d 385, 390 n.3 (5th Cir. 1998) (resolving an issue not argued to the district court "because uncertainty exists with respect to a pure question of law").

---

[11]To comply with Form H-3, Levis Motors must have listed the actual amount paid to Louisiana next to the line designated "Amount Paid to Public Officials For License Fee."  See Gibson, 112 F.3d at 286.

The issue here is one of pure law:  Does a lender violate the TILA by retaining an upcharge and failing to denote this fact in its itemization of the amount paid to third parties.  Additionally, and as the next section of our opinion indicates, "the proper resolution of this question [in the Greens' favor] is beyond any doubt."  Murray v. Anthony J. Bertucci Construction Co., 958 F.2d 127, 129 (5th Cir. 1992).

C

The Seventh Circuit has addressed this identical issue in Gibson, 112 F.3d at 284-86.  That court concluded that the retention of an undisclosed upcharge does violate the TILA.  The reasoning in that opinion is convincing, and we will follow it.

The strongest argument against finding a violation is made by narrowly focusing on two sentences of the FRB's official interpretation (quoted in full ante at 7):

> Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others.  For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

61 Fed. Reg. at 14956 (emphasis added).  By focusing on the permissive words "may" and "could," some district courts (ruling before the Seventh Circuit's opinion in Gibson) read this interpretation to mean that a creditor could choose to disclose

-16-

neither the actual amount of any upcharge nor the possible existence of an upcharge.

But read in the context of the interpretation's entire paragraph and the accompanying explanation (both are quoted in full ante at 7-8), it is clear that the inclusion of permissive terms was not intended to leave open the option of saying absolutely nothing at all about the existence of an upcharge. Instead, the FRB undoubtedly meant to give the creditors the option of either separately itemizing the actual amount paid to third parties or reporting one lump sum (made up of the actual amount paid to a third party and the upcharge) with an accompanying notation that the creditor might have included an upcharge.

This is the way that the Seventh Circuit has read the FRB's official interpretation. To read it any other way, the court said, would be to

> read the commentary to say: "You may conceal the fact that you are pocketing part of the fee that is ostensibly for a third party, but if you are a commercial saint and would prefer to tell the truth, you may do that too." So interpreted, however, the commentary not only would be preposterous; it would contradict the statute. The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention. Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch.

Gibson, 112 F.3d at 285-86.

-17-

In this case, Levis Motors neither itemized the upcharge separately nor indicated that an upcharge might be included. This failure constitutes a clear violation of the Truth In Lending Act.

D

We now consider the liability of Hancock as an assignee. Section 1641(a) governs the liability of assignees for the TILA violations of their assignors. That provision states, in relevant part:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . .

15 U.S.C.A. § 1641(a) (West 1998).

The Greens argue that this provision does not protect Hancock for two primary reasons. First the Greens argue that Levis Motors's TILA violation was apparent on the face of the RIC. Second, the Greens point to the FTC clause,[12] contained within the

---

[12]We repeat the clause for convenience:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

RIC, and argue that that provision makes Hancock liable to the same extent as Levis Motors, notwithstanding § 1641(a).  We discuss these arguments in turn.

1

In the Greens' first argument, they note that Hancock is an experienced player in the credit industry; Hancock regularly purchases RICs from automobile dealers.  Thus, according to the Greens, Hancock must have known, or at least should have known, that Levis Motors included an upcharge in the amount reported as "Amount Paid to Public Officials For License Fee."  Furthermore, the Greens argue, the existence of this upcharge was apparent on the face of the RIC because Hancock could have looked at license fee tables that list the actual amount Louisiana would have charged the Greens.  After noting this amount, the Greens continue, Hancock should have recognized the discrepancy with the amount listed in the Greens' RIC, thereby being alerted of the TILA violation.  According to the Greens, the ready access to the tables makes the alleged TILA violation apparent on the face of the RIC.

In support of its argument, the Greens contrast their own case with Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir. 1998).  In Taylor, the automobile dealer's RIC listed an amount paid to a third party for extended warranty coverage.  This creditor also included an upcharge, which the Seventh Circuit concluded was not apparent on the face of the RIC.  Id. at 694-95.  The Greens argue that their case is different because the actual amount paid to the

-19-

third party (Louisiana) is readily available through public documents.  In contrast, the actual amount paid to third parties in Taylor (the party offering the extended warranty) may not have been as readily available to the assignee.

The district court disagreed with the Greens.  That court held that the violation alleged by the Greens was not apparent on the face of the RIC.  In following several other district court decisions, the district court stated that § 1641(a) establishes an objective test to determine the liability of assignees.[13]  Thus, the court refused to consider Hancock's subjective experience and also refused to read § 1641(a) as requiring Hancock to look to the Louisiana tables.

The district court was correct.  The only "assigned" document that the Greens point to is the RIC.  Although Louisiana's fee tables may be available to the public, those tables do not constitute, according to § 1641(a)'s text, "documents assigned" to Hancock.  A statement from the Seventh Circuit's Taylor opinion applies in this case as well:

> In effect, the rule for which the plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees.  Yet this is the very kind of duty that the statute precludes, by limiting the required

---

[13]See, e.g., Alexander v. Continental Motor Works, Inc., No. 97 C 5828, 1996 WL 79403, at *6 (N.D. Ill. Feb. 16, 1996) ("In general, courts addressing the issue of TILA assignee liability have found that § 1641(a) limits liability when there is no indication from the disclosure documents that liability may arise.").

inquiry to defects that can be ascertained from the face of the documents themselves.

Taylor, 150 F.3d at 694.  The Eleventh Circuit has since agreed with Taylor and stated that "the plain language of the statute forbids us to [resort to evidence or documents extraneous to the disclosure statement]."  Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709 (11th Cir. 1998).  The fact that Taylor and Ellis involved payments to third parties for extended warranty services--as opposed to state licensing fees--is a distinction that has no effect.

The two circuits that have addressed this issue and a common sense reading of § 1641(a) all point towards the conclusion that the alleged TILA violations were not apparent on the face of the Greens' contract.  Thus, under § 1641(a), Hancock is not liable for Levis Motors's violations.

2

Finally, the Greens invoke the FTC clause (quoted ante at footnote 12) of their RIC to argue that Hancock remains liable for Levis Motors's TILA violations regardless of § 1641(a)'s limitations.  Because this clause is in a contract between two parties, the Greens argue, the court should give it its full effect.  This argument becomes problematic, however, because giving this clause the full effect of its language would in every consumer credit contract negate the protections that § 1641(a) provides for the assignee; this is so because the FTC requires

creditors to insert the FTC clause in all consumer credit contracts. See 16 C.F.R. § 433.2 (1999). This situation leaves our court with two options: (1) apply the clause so as to negate the effect of TILA's specific statutory provision; or (2) conclude that § 1641(a) overrides a clause (required by another agency) in a private contract. Both the Seventh and Eleventh Circuits have addressed this problem and both courts had little problem concluding that § 1641(a) overrides the contract clause. Taylor, 150 F.3d at 692-94; Ellis, 160 F.3d at 708-09.

The Taylor court noted that overriding the FTC clause in this context does not nullify it entirely. Taylor, 150 F.3d at 693. The clause still serves a very useful purpose for the plaintiffs. For example, "[i]f the cars they purchase turn out to be lemons and they assert a right to withhold payment against the sellers, they may also assert the same right against the assignees." Id. Thus, § 1641(a) limits assignee liability on only one set of claims (i.e., the specified TILA claims). The Taylor court further reasoned that the FTC clause, "even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law, and it must be read in light of other laws that modify its reach." Id.[14]

_____

[14]The Ellis court agreed with the Taylor court on these points and reiterated its reasoning. Ellis, 160 F.3d at 709.

The Greens respond to this by pointing us to 15 U.S.C. § 1610(d):

> Except as specified in sections 1635, 1640, and 1666e of this title, this subchapter and the regulations issued thereunder do not effect the validity or enforceability of any contract or obligation under State or Federal law.

The Greens argue that to deny the FTC clause's application to TILA claims would be to invalidate (at least in part) the retail installment contract. Section 1610(d), according to the Greens, disclaims any intent to modify the reach of the included FTC clause.

To read § 1610(d) this way, however, would still produce an absurd result: the protections of § 1641(a) would never have any effect on consumer credit contracts. We fully recognize that the FTC's regulations do not neatly complement the TILA in this case. Yet, faced with the choice presented, we agree with the conclusion reached by the Taylor and Ellis courts, thereby choosing the lesser of two imperfect options.

VI

In sum, we have concluded that the good faith safe harbor provision of the TILA does not shield Levis Motors from liability in this case. Furthermore, Levis Motors's RIC did violate the TILA. Therefore, we will remand for further proceedings with regard to Levis Motors. Finally, we will affirm the district court's grant of summary judgment in favor of Hancock. We will

therefore remand for further proceedings not inconsistent with this opinion.

REVERSED in part, AFFIRMED in part, and REMANDED.