

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2000

# Ramadan v. Chase Manhattan Corp

Precedential or Non-Precedential:

Docket 99-5709

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Ramadan v. Chase Manhattan Corp" (2000). *2000 Decisions.* Paper 214.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/214

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 6, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5709

SUSANNE H. RAMADAN, on her own behalf
and on behalf of all others similarly situated

v.

THE CHASE MANHATTAN CORPORATION;
HYUNDAI MOTOR FINANCE CO.

        Susanne H. Ramadan, Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 96-cv-03791
(Honorable Maryanne Trump Barry)

Argued: June 1, 2000

Before: SCIRICA and NYGAARD, Circuit Judges,
and POLLAK, District Judge*

(Filed: October 6, 2000)

ANDREA BIERSTEIN, ESQUIRE
 (ARGUED)
Kirby, McInerney & Squire
830 Third Avenue, 10th Floor
New York, New York 10022

 Attorney for Appellant

_____

* The Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

WALTER J. FLEISCHER, JR.,
 ESQUIRE (ARGUED)
Drinker, Biddle & Shanley
500 Campus Drive
Florham Park, New Jersey
 07932-1047

 Attorney for Appellee,
Hyundai Motor Finance Co.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal requires us to apply the Truth in Lending Act's assignee liability provisions in light of contract language required by regulatory fiat and to determine the parameters of assignee liability under the TILA. Asserting a violation of the Truth in Lending Act, 15 U.S.C.S 1601 et seq., plaintiff alleges she was harmed by deceptive lending practices of a dealer from whom she purchased an automobile. Plaintiff seeks to recover against Hyundai Motor Finance Co., the assignee of her finance agreement, rather than against the automobile dealer. Three Circuit Courts of Appeals have encountered nearly identical TILA claims and all have concluded plaintiffs could not state a claim.1 Following those courts, the District Court granted Hyundai's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We will affirm.

I.

We have jurisdiction under 28 U.S.C. S 1291. We exercise plenary review over a district court's order dismissing a complaint under Fed. R. Civ. P. 12(b)(6). See, e.g., Port Authority v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999); Alexander v. Whitman, 114 F.3d 1392, 1397-98 (3d Cir. 1997). In conducting our review, we must

_____

1. See Green v. Levis Motors, Inc., 179 F.3d 286 (5th Cir. 1999); Ellis v. GMAC, 160 F.3d 703 (11th Cir. 1998); Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir. 1998).

> determine if plaintiff may be entitled to relief under any
> reasonable reading of the pleadings, assuming the
> truth of all the factual allegations in the complaint. . . .
> A court may dismiss a complaint only if it is clear that
> no relief could be granted under any set of facts that
> could be proven consistent with the allegations.

Alexander, 114 F.3d at 1398 (citations omitted).

II.

As noted by the District Court, the facts in this case are uncomplicated.2 Ramadan purchased a used Hyundai for $4,238.50 from automobile dealer Bob Ciasulli, Inc. 3 Plaintiff also purchased an extended warranty contract for $998.00. Because she purchased on credit, the sale was achieved through a Retail Installment Contract ("RIC").4 Hyundai provided the RIC form to the dealer. Contemporaneous with its execution, the RIC was assigned to Hyundai Motor Finance Corp.

At the time the RIC was assigned to Hyundai, other loan documents were also transmitted, among them an accounting of payments made under the RIC, which plaintiff alleges "reveal the true cost of the warranty, the actual amount paid to the issuer and the payment of the undisclosed finder's fee." Compl. at P29. Plaintiff also alleges Hyundai "issue[d] the checks or credits in payment for the warranty and in payment for the commission or finder's fee." Id.

_____

2. This is the second time this case has been before this court. The first time, we determined the TILA statute of limitations provision was subject to equitable tolling. See Ramadan v. The Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998).

3. Plaintiff is attempting to bring suit on her own behalf and on behalf of those similarly situated. See Compl. atP1. The District Court made no determination with respect to the class action aspects of this case.

4. Plaintiff signed three different RICs in connection with the sale. See Ramadan v. Chase Manhattan Corp., 973 F. Supp. 456, 457 (D.N.J. 1997). Despite semantic differences, all three are alleged to have contained the same TILA violating provision. See id. For the sake of clarity, we will treat this as if plaintiff signed one RIC containing the alleged misrepresentation, which was then assigned to Hyundai.

3

The RIC contained a provision which itemized "Other Charges Including Amounts Paid to Others on Your Behalf " and stated $998.00 had been paid for a service contract. Ramadan alleges an undisclosed amount of that figure was retained by the dealer without her knowledge in violation of the TILA. Given the nature of review of a motion made under Fed. R. Civ. P. 12(b)(6), we must accept plaintiff 's assertion as true.

Central to this case are two provisions--TILA's assignee liability rule and a Holder Notice required by Federal Trade Commission regulations. The TILA section which governs assignee liability provides:

> Except as otherwise provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purposes of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. S1641(a) (emphasis added). In accord with FTC rules, see 16 C.F.R. S433.2(a) (1997), the RIC also contained a Holder Notice, which stated:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The proper understanding of these two provisions lies at the heart of this case. Holding the TILA assignee liability

4

provision rather than the Holder Notice governed the action, the District Court held plaintiff could not state a claim under 15 U.S.C. S1641(a) because there was no "violation apparent on the face of the disclosure document." See Ramadan v. Chase Manhattan Corp., No. 96-3791, slip op. at 6-8 (D.N.J. Aug. 4, 1999). Lacking guidance from our circuit, the District Court adopted the views of the three United States Courts of Appeal that have addressed similar claims. The Courts of Appeals for the Seventh, Eleventh and Fifth Circuits have all concluded in situations similar to those presented here that an assignee could not be held liable under the TILA. See Green, 179 F.3d at 286; Ellis, 160 F.3d at 703; Taylor, 150 F.3d at 689. 5

III.

Ramadan contends S 1641(a) encompasses her claim that the TILA violation here was apparent on the face of the disclosure statement as that concept is statutorily defined. She also asserts Hyundai is liable because it expressly assumed assignee liability by including the Holder Notice clause in the RIC.

A.

As noted, the TILA imposes assignee liability only if a violation is "apparent on the face of the disclosure statement." Section 1641(a) further explains:"a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. S1641(a). Ramadan never alleged the TILA violation was apparent on the face of the RIC. She contends her assertion that "[t]he inaccuracies and misrepresentations regarding the extended warranty

_____

5. The Taylor and Ellis courts faced practically identical facts. See Taylor,
150 F.3d at 691-92; Ellis, 160 F.3d at 705. The deception alleged in Green concerned hidden charges for state licensing fees. See Green, 179 F.3d at 288.

5

disclosures are obvious . . . on the face of the installment sales contract or from other related documents . . .," Compl. at P29 (emphasis added), nevertheless suffices to state a claim. We cannot agree. Even the statute's "but is not limited to" or "other documents assigned" language does not permit such an expansive interpretation of what provides adequate assignee notice to trigger TILA liability.

The disclosure statement assigned to Hyundai was not transmitted in a vacuum, but together with "related loan documents, including the accounting of distributions made pursuant to the contract." Ramadan contends those documents should be considered to determine whether a violation was apparent on the face of the disclosure statement because TILA is a remedial statute which should be construed broadly. See Ramadan, 156 F.3d at 502 ("TILA is a remedial statute and should be construed liberally in favor of the consumer."); Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3d Cir. 1988) ("TILA, as a remedial statute which is designed to balance the scales `thought to be weighed in favor of lenders,' is to be liberally construed in favor of borrowers." (citations omitted)).

The flaw in that argument is apparent in Ramadan's restatement of her claim:

> Here, plaintiff alleges that the violation is apparent on the face of the disclosure statement because the disclosure can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned or transmitted together with the disclosure statement.

Appellant's Reply Br. at 5 (emphasis altered from original). The "or transmitted" clause in Ramadan's restatement is a significant alteration of the statutory language. Section 1641(a) recites "other documents assigned," not "other documents transferred" or "other documents." If the other document is "not assigned" it does not fall under the statutory definition. A document transferred but not assigned cannot qualify even under a liberal construction of the statute. Cf. Green, 179 F.3d at 295 (rejecting plaintiff 's argument that violation was apparent because information

6

on RIC conflicted with publicly available information because "[t]he only `assigned' document that the [plaintiffs] point to is the RIC").

Resort to the "but is not limited to" language in S 1641(a) is similarly unavailing. As noted, our sister circuits have uniformly held that "apparent on the face" means exactly that--for an assignee to be liable under TILA, the violation must be apparent on the face of the assigned disclosure documents. We agree.

In Taylor, for example, plaintiff asserted the violation at issue was "apparent on the face" because the lender, given its experience in the field, must have known that a violation had occurred. See Taylor, 150 F.3d at 694 (noting plaintiff 's allegation "the apparentness (or lack thereof) of a violation should be ascertained in light of the knowledge that a reasonable assignee similarly situated to the defendants should have"). The Taylor Court rejected that argument because "the rule for which the plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees." Id.  The Taylor Court correctly held that S 1641(a) creates no such duty and that "[o]nly violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA." Id.

Avoiding the imposition of a duty of inquiry on lenders is not the sole justification proffered by our sister circuits in rejecting claims similar to those made here. In fact, Ramadan's allegations are nearly identical to those rejected in Ellis. As the United States Court of Appeals for the Eleventh Circuit explained:

> The Ellises argue that since GMAC issued the checks and credits to [the extended warranty provider] in payment for the warranty and that related loan documents reveal the true cost of the warranty as well as the amount paid to the parties, the discrepancy between the amount supposedly paid to [the extended warranty provider] and the amount actually paid by GMAC reflected a violation on the face of the documents.

7

160 F.3d at 709. The Ellis Court rejected this argument because it required the court to "resort to evidence or documents extraneous to the disclosure statement" and "[t]his the plain language of [S1641(a)] forbids us to do." Id.

The United States Court of Appeals for the Fifth Circuit closely followed Taylor and Ellis when it concluded that it could look at "assigned documents" and only"assigned documents" to determine liability under S 1641(a). See Green, 179 F.3d at 295. In Green, plaintiff argued the additional information assignee needed to determine the existence of a TILA violation was publically available in the form of state licencing fee tables. The court rejected that argument because "[a]lthough Louisiana's fee tables may be available to the public, those tables do not constitute, according to S 1641(a)'s text, `documents assigned' " to the assignee. Id.

Ramadan admits the documents crucial to Hyundai's ability to determine the existence of a TILA violation were not assigned to Hyundai. But, as in Ellis and Green, plaintiff here urges that "apparent on the face of the disclosure statement" encompasses TILA violations other than those that can be determined from looking at the assigned disclosure statement. As the Green, Ellis and Taylor courts have explained, looking beyond the documents assigned to determine whether a violation was "apparent on the face of the disclosure statement" is inconsistent with S 1641(a). See also Elwin J. Griffith, Truth in Lending--Recission, Consumer Remedies and Creditor Defenses in Closed-end Transactions, 19 U. Tol. L. Rev. 491, 538 (1988) ("The rationale for this protection is that the assignee should not be saddled with violations that are not readily detectable.").

That Congress meant to exclude resort to outside documents in defining assignee liability under TILA is clear both from the changes Congress made in its 1980 amendments to S 1641(a) and from the subsequent addition of a related subsection.

Prior to the 1980 amendments, S 1641 provided:

> [I]n any action or proceeding by or against any
> subsequent assignee of the original creditor without

8

knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of delivery thereof and, unless the violation is apparent on the face of the statement, of compliance with this part.

15 U.S.C. S 1641 (1979). In amending S 1641, Congress removed the "without knowledge" language from the section dealing with assignee liability although it left similar language in another subsection of 1641.6  See 15 U.S.C. S 1641(b). The removal demonstrates Congress intended actual knowledge independent of what could be discerned from the disclosure statement to be insufficient to trigger assignee liability under S 1641(a).

As noted, Ramadan alleges the TILA violation here was apparent on the face of the disclosure statement because

Hyundai issue[d] the checks or credits in payment for the warranty and in payment for the commission or finder's fee and thus ha[d] actual knowledge of the falsity of the representation in the contract. . . .

Compl. at P29. Although counsel for plaintiff conceded at oral argument that liability "can't be [triggered by] knowledge," her argument indicated an attempt to draw a distinction between constructive knowledge, which she contended would be insufficient, and actual knowledge,

_____

6. As noted, S 1641(a) currently provides:

Except as otherwise provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purposes of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. 1641(a).

which she asserted was sufficient to support assignee liability. There is nothing in the history or text of S 1641(a) to support such a differentiation.

That the allegations here fail to state a claim under S 1641(a) is also apparent from a comparison of that section with one of its companion subsections. See 15 U.S.C. S 1641(e). Section 1641(e) creates assignee liability for TILA violations in transactions secured by real property. As in S 1641(a), assignee liability is triggered by violations "apparent on the face of the disclosure statement provided in connection with such transaction . . . ." Id. But S 1641(e) provides a different definition of "apparent on the face":

> For the purpose of this section, a violation is apparent on the face of the disclosure statement if--
>
> (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement. . . .

Id. Although S 1641(e) was adopted 15 years after S 1641(a), it demonstrates Congress knows how to adopt a different formulation of "apparent on the face" if it desires. In this case of alleged assignee liability in a consumer credit transaction not involving real property as security, it has not done so.

As noted by the Taylor court, Congress "narrowed considerably the potential scope of assignee liability," by enacting the current version of S 1641(a). Taylor, 150 F.3d at 693. Plaintiff 's interpretation of S 1641(a) runs counter to Congress's considered judgment.

A narrowing of assignee liability is consistent with the overarching reasons put forth by Congress for amending the TILA in 1980. Explaining the purpose behind the amendments, the Senate Committee on Banking, Housing and Urban Affairs noted that "many creditors have sincerely tried to comply with the act but, due to its increasing complexity and frequent changes, have nonetheless found themselves in violation and subject to litigation." S. Rep. 96-73, reprinted in 1980 U.S.C.C.A.N.

10

236, 281. For that reason, among others, Congress amended TILA to "mak[e] compliance easier for creditors [and] limit[ ] creditor civil liability for statutory penalties to only significant violations . . . ." Id. The reading of S 1641(a) applied by our sister circuits conforms with Congress's intent to simplify compliance by creditors and limit liability while offering protection to consumers against illegal lending practices.

Congress's narrowing of assignee liability is also consistent with the other changes Congress made to the TILA in 1980. Before the 1980 amendments, dealers and lenders were both treated as "creditors" subject to consumer suits. See 15 U.S.C. S 1602(f) (1976). See also Elwin J. Griffith, supra, at 538. Post-1980, there is a clear divide between the liability of "creditors," defined as "the person to whom the debt . . . is initially payable," 15 U.S.C. S 1602(f) (1982), and assignees. This change was made to "eliminate confusion under the [pre-1980] act as to the responsibilities of assignees and `arrangers of credit.' " S. Rep. 96-368 at 24, reprinted in 1980 U.S.C.C.A.N. 236, 259. Plaintiff 's interpretation of S1641(a) would undo the distinction drawn by Congress.

B.

Ramadan also contends the District Court erred in granting Hyundai's motion to dismiss because of Hyundai's express assumption of assignee liability. As noted, the FTC-required Holder Notice included in the RIC provides for assignee liability with regard to "all claims and defenses which the debtor could assert against the seller . .. ." In light of this provision, plaintiff asserts the RIC should be enforced as written.

The same argument has been made to, and rejected by, other courts that have examined assignee liability under TILA. See, e.g., Green, 179 F.3d at 296; Ellis, 160 F.3d at 709; Taylor, 150 F.3d at 693. The Taylor Court noted that, by FTC regulation, the RIC must contain the Holder Notice. See Taylor, 150 F.3d at 692 (citing 16 C.F.R.S433.2). Because of that requirement, the Taylor Court concluded

11

> The Holder Notice, even though contained within the
> contract, was not the subject of bargaining between the
> parties, and indeed could not have been. It is part of
> the contract by force of law, and it must be read in
> light of other laws that modify its reach.

Id. at 693. In the opinion of the Taylor  Court, S 1641(a)
"limited one set of claims [the Holder Notice] may carry
through to the assignee . . . ." Id. The Eleventh Circuit
similarly concluded the Holder Notice language "required by
the FTC regulation standing alone does not suffice to
subject [assignee] to liability." Ellis , 160 F.3d at 709. The
notice could not have such an effect because inclusion of
required language did not result from "bargaining or
agreement by the parties to reflect [ ] a voluntary and
intentional assumption of liability." Id. In fact, every federal
court that has considered the Holder Notice argument since
the Taylor decision, including the District Court here,
followed Taylor's reasoning and concluded inclusion of the
Holder Notice cannot trump the assignee liability rules in
S 1641(a).

Plaintiff challenges the soundness of the Taylor , Ellis and
Green decisions and contests whether Hyundai's inclusion
of the Holder Notice was truly involuntary. According to
plaintiff, Hyundai could have carved out an exception to
TILA liability in the Holder Notice. Given that option,
Ramadan asserts inclusion of the unaltered Holder Notice
reflects Hyundai's intent to assume greater liability than
that created by S 1641(a).

That argument misses the point. The FTC rule requiring
the Holder Notice is explicit regarding its inclusion:

> In connection with any sale or lease of goods or
> services to consumers . . . it is an unfair or deceptive
> act or practice . . . for a seller, directly or indirectly, to:
>
> (a) Take or receive a consumer credit contract which
> fails to contain the [Holder Notice] provision in at least
> ten point, bold face type. . . .

16 C.F.R. S433.2. By its terms, the FTC regulation is
mandatory; it does not contemplate deviations or
modifications. Because regulations cannot trump statutory

12

mandates, the FTC mandated language must be understood in light of any statutory limitations.

Plaintiff also takes issue with the involuntariness argument central to the Taylor-Ellis analysis contending it is inconsistent with the standard of review on a motion to dismiss. There is, however, no allegation the Holder Notice was included voluntarily by Hyundai. In fact, plaintiff 's complaint recognizes the Holder Notice was included in the RIC in compliance with 16 C.F.R. S422.3. See Compl. at P41. Given the regulatory requirement, it is reasonable to assume the Holder Notice was not voluntarily included and therefore does not manifest Hyundai's intent to contract around S 1641(a).

Ramadan argues that whether or not our sister circuits are correct, this case is governed by Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729 (3d Cir. 1989), 7 which she asserts stands for the proposition that courts should enforce the clear language of a contract and not look beyond the contract language to the regulatory background. See id. at 734.

Ballay concerned an agreement between parties to a brokerage contract that provided for arbitration of all claims except those arising from "federal securities laws." Id. at 731. Investors brought suit asserting a number of violations, including violations of the Securities Act of 1933. See id. at 730. The District Court denied defendant's motion to compel arbitration on all claims including those arising under "federal securities laws." Id. At the time the agreement was signed, parties could not agree in advance to arbitrate Securities Act claims. As a result, SEC rules required that arbitration clauses, if made part of an agreement, include a provision noting that Securities Act claims could not be arbitrated. Subsequent to execution of the agreement, the SEC rescinded its rule and during the pendency of the case, the Supreme Court decided securities claims could be arbitrated. See id. at 734. Defendant, Legg Mason, argued that because of the SEC rule in effect at the time of execution, the exception was not bargained for and

_____

7. The District Court distinguished Ballay . See Ramadan, No. 96-3791, slip op. at 8 n.7.

13

thus should not be binding. The Court concluded that it could not look beyond the language of the contract, holding the defendant should have challenged the rule if it did not want to be bound by it or at least it should have renegotiated the arbitration exception after the repeal of the governing SEC rule. See id.

Ramadan asserts the language in the RIC "admits of no justification for looking beyond it to the regulatory history surrounding its inclusion." Id. As with Legg Mason, she contends Hyundai "cannot now win relief from the specific language of its own contract simply because it claims not to have meant what it said." Id.

Despite some similarities, there are stark differences between this case and Ballay. Ballay did not involve the interplay of federal regulations and statutory provisions. The contract provision in question in Ballay was consistent both with the underlying legal framework at the time it was agreed upon and at the time it was enforced. Inclusion of the provision exempting securities claims from arbitration was consonant with SEC regulations at the time the contract was executed. See id. Although arbitration of disputes had been judicially accepted and the SEC regulation had been rescinded by the time Ballay was decided, arbitration was not compulsory. See id. at 733 ("Although the Federal Arbitration Act establishes a presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire."). Therefore, the exclusion provision at issue in Ballay was not contradicted by the statutory or regulatory background.

That is not the case here. The Holder Notice language included in the RIC is far more expansive than TILA's assignee liability language. Indeed, there is a clear irreconcilable conflict between the two provisions. The Ballay Court faced no such conflict.

The Ballay Court also addressed the presumption of voluntariness in a way that distinguishes it from this case. As noted, the regulation in Ballay requiring the arbitration exception language was no longer in effect at the time of the case. The Ballay Court observed defendant had ample

14

opportunity to renegotiate the terms of the arbitration clause and chose not to, thereby undermining its involuntariness argument. See id. at 734. Here, both the FTC Holder Notice regulation and S 1641(a) have been in effect at all relevant times. Hyundai has not had the same opportunity to negotiate in a changed regulatory environment as did Legg Mason in Ballay. Absent such an opportunity, inclusion of the Holder Notice in the RIC cannot be seen as voluntary in the way the continued presence of the arbitration exception language in the broker contract was seen as voluntary in Ballay.

Ramadan also relies on a Florida state court decision, Boden v. Atlantic Fed. Sav. & Loan Ass'n, 396 So.2d 827 (Fla. Dist. Ct. App. 1981). Relying on an exception to a Florida statute governing assignee liability in home installment contracts which exempted savings and loans from such liability, the trial court in Boden held the defendant could not be liable for a breach of an assigned home installment contract. See id. at 829. The trial court reached that conclusion even though the assigned home installment contract contained a "Holder Notice" provision. See id. at 828. The Florida appellate court concluded the savings and loan association could agree to assignee liability even though it was exempted from such under state law and that it "voluntarily subject[ed] itself to liability by the terms of the home improvement contract." Id. at 829. Plaintiff has offered no reason, other than the Boden court's adoption of a mode of analysis more sympathetic to its position than that adopted by our sister circuits, as to why we should follow the Florida District Court of Appeals. Of course, Boden did not involve the interplay of federal statutory law and regulatory requirements and the conflict between the two.

In short, neither our decision in Ballay nor Boden compels a different result from that reached by the District Court here. The FTC-required Holder Notice cannot trump the TILA's assignee liability mandates.

As the dissent notes, parties to a contract may "waive statutory protections and assume liabilities not required by law." Ellis, 160 at 709. But like the court in Ellis, we believe the defendant has not done so here. There is no allegation

15

or evidence that Hyundai waived its statutory rights or agreed to assume liability beyond that set forth in S 1641(a). Hyundai's failure to include with the Holder Notice a warning or disclaimer does not constitute the type of intentional relinquishment necessary to give rise to a waiver of statutory rights. Without some evidence the parties bargained for and Hyundai waived its statutory rights, there is no basis to impose waiver or estoppel.

IV.

For the foregoing reasons, we will affirm the District Court's judgment dismissing plaintiff 's complaint under Fed. R. Civ. P. 12(b)(6).

16

POLLAK, District Judge, dissenting.

I agree with the court's conclusion, in Part III(A) of its opinion, that the case at bar is not one in which the alleged violation of the TILA "is apparent on the face of the disclosure statement" and hence could have been the basis for Ms. Ramadan's suit "against [Hyundai Motor Finance (hereinafter "Hyundai") as] assignee of[a] creditor." 15 U.S.C. S 1641(a). But I disagree with the court's conclusion, in Part III(B) of its opinion, that the language of the Holder Notice, which was contained in Ms. Ramadan's automobile finance agreement and which advised Ms. Ramadan that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS . . . WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER," did not provide a basis for Ms. Ramadan's suit against Hyundai.

As I understand the court's opinion, its determination that the Holder Notice is nugatory is the product of the following syllogism: (1) The Holder Notice appeared in Ms. Ramadan's finance agreement (and, one must suppose, hundreds of thousands of other finance agreements) not as a provision voluntarily acquiesced in by the seller and the assignee finance company, but in compliance with a regulation of the Federal Trade Commission making it"an unfair and deceptive trade act or practice . . . for a seller, directly or indirectly, to . . . [t]ake or receive a consumer credit contract which fails to contain the [Holder Notice] provision. . . ." 16 C.F.R. S 433.2. (2) In determining the scope of civil liability for violations of the TILA, Congress has limited the liability of an assignee of a finance agreement to violations "apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. S 1641(a). (3) Since the Holder Notice's inclusion in the Ramadan finance agreement was, in the court's view, coerced by the FTC; and since the Holder Notice, as prescribed by the FTC regulation, is in the court's view, in "irreconcilable conflict" with the TILA; and since "regulations cannot trump statutory mandates," the Holder Notice must give way.

The syllogism has, unquestionably, a straightforward simplicity which makes it quite compelling. The difficulty with the syllogism is that its focus is confined to the

17

respective interests of Congress, the FTC, and Hyundai. Ms. Ramadan is, it appears, outside the terms of debate. But it is the Ramadans of the world to whom the Holder Notice is addressed. It is the Ramadans of the world who can be taken to have relied on what the Hyundais of the world have, by accepting assignment of finance agreements, said to them. Granted that Congress has authority to negate the FTC directive that the Holder Notice be incorporated in every "consumer credit contract." That appears to be what Congress meant to do when, in 1980, it amended TILA in a fashion that substantially narrowed the assignee liability that the FTC had established by regulation several years before. But if, after 1980, a finance company continued to accept (or, if new to the financial marketplace, commenced accepting) finance agreements which contained the Holder Notice, why--as between the finance company and the purchaser–borrower--shouldn't the finance company be held to the representation of holder liability contained in the finance agreement?

The court's answer, so it would appear, is that the Holder Notice was never bargained for--that in its inception it was placed in finance agreements by virtue of FTC ukase. And presumably the court is also of the view that it is the enduring in terroremness of the FTC's authority that accounts for the continuing presence of the Holder Notice in finance agreements entered into (and sometimes litigated about) a decade, or even two decades, after Congress amended the TILA and, by hypothesis, exercised its authority to deflate the FTC regulation. I will not argue (although I think the argument could plausibly be made) that by now the Holder Notices that remain in place are there because finance companies, well aware that Congress in 1980 relieved them of any administratively mandated liability, have decided to accept liability as a contractual matter. To the contrary, I am prepared to accept, arguendo, that the Holder Notice remains an unbargained-for ingredient of the standard finance agreement. But it seems to me that a finance company, feeling that the Holder Notice is in place via force majeure and intending to defend against its applicability in any litigation that may arise, should, before accepting assignment of a finance agreement, insist that the Holder Notice be garlanded with

18

caveat emptors that warn the purchaser-borrower of the finance company's view that the 1980 TILA amendment robs the Holder Notice of substantive effect. Afinance company has no ground for supposing that more than one in tens of thousands of purchaser-borrowers (the Ramadans of the world) will be conversant with the interplay between the FTC regulation and TILA. Given the disparity in the possession of crucial information, I would conclude that an assignee finance company that failed to insist on inclusion of an appropriate warning adjacent to the Holder Notice should be estopped from invoking the Holder Notice in litigation.

Requiring an assignee finance company that wishes to protect against TILA liability to add the type of warning described above would avoid the difficulty of frustrating a purchaser-borrower's expectations. It would also avoid the consequences the court appears to be concerned about. Finance companies would no longer have grounds for feeling that they were being pushed by the FTC to give up rights guaranteed by Congress. Finance companies would have the choice to construct a contract that assigned TILA liability or to construct a contract that did not do so. Purchaser-borrowers' reasonable expectations, andfinance companies' freedom to avoid assignee liability (as they are entitled to do under 15 U.S.C. S 1641(a)), would thus be preserved.

This approach is possible because the conflict between the statutory and regulatory provisions is not, as the court states, "irreconcilable." As was recognized in Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709 (11th Cir. 1998), "[i]t is certainly true that parties can waive statutory protections and assume liabilities not required by law." And while Hyundai is required by the FTC to include the Holder Notice as written, the FTC regulation does not prohibit additional language preserving the finance companies' rights under 15 U.S.C. S 1641(a). Nor could the FTC prohibit the inclusion of such language, for the very reason that animates the court's opinion: the FTC's regulations cannot trump congressional statutes.

Such an approach would, so it seems to me, be in harmony with this court's approach to the cognate problem

19

presented in Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729 (3d Cir. 1989). In today's opinion the court says that, "[d]espite some similarities, there are stark differences between this case and Ballay." I find the differences far less stark than the court does. And I find compelling the wisdom animating Judge Rosenn's opinion for the Ballay court:

> [W]e conclude that the unequivocal exclusionary language in plaintiffs' arbitration agreements creates a contractual right to litigate plaintiffs' Securities Act claims. The language admits of no justification for looking beyond it to the regulatory history surrounding its inclusion. In any event, even if we were to look at the regulatory background we see no reason in it for rejecting customers' reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law.

878 F.2d at 734.

For these reasons, I respectfully dissent.

A True Copy:
Teste:

> Clerk of the United States Court of Appeals
> for the Third Circuit

20