Audrey C. JORDAN, on her own behalf and on behalf of all others similarly situated, Plaintiff,

v.

CHRYSLER CREDIT CORPORATION, Defendant.

No. Civ.A. 96–3548.

United States District Court, D. New Jersey.

Nov. 12, 1999.

**470**

Richard L. Stone, Andrea Bierstein, Kirby McInerney & Squire, New York City, Robert Berg, Bernstein Liebhard & Lifshitz, Fort Lee, NJ, for plaintiff.

Howard J. Roin, Christina Egan, Mayer, Brown & Platt, Chicago, IL, Theodore Margolis, Norris, McLaughlin & Marcus, Somerville, NJ, for defendant.

## OPINION

WOLIN, District Judge.

This matter comes before the Court on defendant's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has decided the motion on the papers pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion will be granted, and the Complaint will be dismissed in its entirety. The Court will dismiss plaintiff's Truth in Lending Act claim with prejudice and will dismiss plaintiff's supplemental state law claims without prejudice.

## BACKGROUND

Plaintiff, Audrey Jordan, alleges the following facts. On January 10, 1994, plaintiff purchased a new 1994 Dodge Shadow from Motor World Dodge in Paramus,

New Jersey. Plaintiff financed her purchase through a Retail Installment Contract ("RIC") she entered into with Motor World Dodge. The RIC was a standard form contract prepared by defendant, Chrysler Credit Corporation ("Chrysler"), and provided to Motor World Dodge by Chrysler. Upon its execution, preprinted language on the face of the RIC worked to contemporaneously assign the RIC to Chrysler.

Plaintiff also purchased an extended warranty contract for her car. The cost of the extended warranty was added to the cost of the car and financed through the RIC. The RIC purported to itemize the amounts financed. Beneath the heading "ITEMIZATION OF THE AMOUNT FINANCED ...," the RIC listed five sections: "Cash Price," "Downpayment," "Unpaid Balance of Cash Price," "Other Charges Including Amounts Paid to Others on Your Behalf," and the total "Amount Financed," each sub-itemized. This suit involves the fourth section.

In the fourth section, "Other Charges Including Amounts Paid to Others on Your Behalf," sub-part 4(c) stated that $2995.00 [1] was to be paid for an extended warranty. The sub-part failed, however, to identify to whom the payment was being made or the amount paid to third-parties. Instead, it simply stated the following:

c. Paid to:

For: EXTENDED WARRANTY 2995.00

The Complaint alleges that the portion in the fourth section of the RIC concerning the price paid for the extended warranty was "false, inaccurate and misleading. The amount stated was not paid to any other person, including the issuer of the extended warranty, on Ms. Jordan's behalf for an extended warranty. Rather, only a portion of the amount stated was paid on Ms. Jordan's behalf to a third-party for an extended warranty. The balance was retained by or paid to the automobile dealer-

1. The total amount financed was listed as $14,688.75.

ship as a commission or finder's fee." (Complaint at ¶ 13). The result is that "the cost of the warranty and the amount financed are thereby inflated without the debtor's knowledge. Chrysler Credit benefits from this deceptive practice in that (a) the dealership has an incentive to sell extended warranties, including those issued by Chrysler Credit or its affiliates, and (b) the amount financed by Chrysler Credit as creditor or assignee is inflated." (Complaint. at ¶ 15).

In Count One, plaintiff contends that defendant is liable under the Federal Truth in Lending Act, 15 U.S.C. § 1638, *et seq.* ("TILA"); 12 C.F.R. § 226.1, *et seq.*[2] Specifically, plaintiff's complaint alleges that the RIC "did not comply with the statutory and regulatory requirements of TILA, in that the RIC did not disclose accurately the amount paid to a third-party on plaintiff's behalf for an extended warranty, but instead provided a false number that was mis-represented to be the amount paid on the consumer's behalf." (Complaint at ¶ 35). Nowhere does the complaint allege a TILA violation for failing to disclose the identity of the recipient of the extended warranty fee.

The remaining Counts allege state law claims.[3] Count Two alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. 58:8–1, *et seq.* Count Three claims breach of contract. Count Four asserts a claim for money paid by mistake. In addition to her individual claims, plaintiff seeks to represent a class of those similarly situated.

Chrysler previously moved to dismiss the complaint for failure to state a claim.[4] While the court nearly granted the motion,

in a March 22, 1999 opinion, it gave the plaintiff an opportunity to amend her pleadings. The Court specifically directed the plaintiff to "clarify her pleadings with regard to class membership and corresponding theories of recovery." (Mar. 22 Opin. at 10). As discussed at length below, plaintiff has failed to make sufficient changes necessary to withstand Chrysler's Rule 12(b)(6) motion.

**Relevant Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint, and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the complaint. *See, e.g., Wilson v. Rackmill,* 878 F.2d 772, 775 (3d Cir.1989). A complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. *See id.; Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Thus, the Court will determine whether plaintiff has alleged

---

**2.** The Court's original jurisdiction over this claim is pursuant to 28 U.S.C. § 1331.

**3.** The Court's jurisdiction over the supplemental state claims is pursuant to 28 U.S.C. § 1367.

**4.** In July, 1997, the Court placed this case on administrative termination pending the Third Circuit's resolution of Judge Barry's decision in *Ramadan v. Chase Manhattan Corp.,* 973 F.Supp. 456 (1997), *rev'd,* 156 F.3d 499 (3d

Cir.1998). Judge Barry found that, in a case with statute of limitation issues similar to the instant case, the one-year TILA statute of limitation was jurisdictional in nature and, thus, could not be equitably tolled. The Third Circuit reversed her decision finding that it is subject to equitable tolling because it is not jurisdictional in nature. *See Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3d Cir.1998). Thereafter, the Court reactivated this case. Today, defendant does not assert a statute of limitations defense.

sufficient facts so that it should be allowed to offer evidence to support its claims.

## DISCUSSION

### I. The TILA Claim

■ Among other obligations, Section 1638(a) of TILA requires creditors to disclose "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). Similarly, the regulations, which clarify and explain this provision, state that creditors should provide a "separate written itemization of the amount financed, including ... amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons." 12 C.F.R. § 226.18(c)(iii) (1999). With certain exceptions, TILA provides a private right of action for damages on behalf of an individual or class against "any creditor who fails to comply with any requirement imposed under this part." *See* 15 U.S.C.

§ 1640(a). Thus, in light of the above, a plaintiff can allege two separate violations: (1) a failure to disclose an amount paid on a consumer's behalf to a third party and (2) a failure to identify a third party who received that payment.

Significantly, plaintiff's complaint only alleges the first violation—in this case, that the RIC falsely stated that the entire extended warranty fee was paid to a third party when, in fact, the dealer retained a portion of the charge. It fails, however, to allege a violation for failing to disclose the identity of the recipient of the fee.[5] Indeed, even though the Court, in a prior opinion, explicitly directed the plaintiff to correct this deficiency, plaintiff stubbornly refused to amend her complaint to contain such an allegation.[6] (Mar. 22 Opin. at 6–10). As discussed below, the outcome of this case may have been different if the plaintiff simply amended her complaint.[7]

■ Moreover, plaintiff fails to bring any claim against the dealer—a "creditor" for TILA purposes. She only sues Chrys-

---

**5.** While the complaint cites the statute and regulations, it only alleges a violation for "not complying with the statutory and regulatory requirements of TILA, in that the RIC did not disclose accurately the amount paid to a third-party on plaintiff's behalf for an extended warranty." (Complaint at ¶ 15). Nowhere does the complaint allege a violation for failing to identify the third-party.

**6.** Indeed, in a prior opinion, the Court directed the plaintiff to amend her pleadings. Specifically, the Court directed the plaintiff to allege a violation for failure to disclose the identity of the recipient of the extended warranty fee. (Mar. 22 Opin. at 6–10). The Court did this so that her claims would mirror a plausible class. The Court also did this so that her complaint might survive a 12(b)(6) motion. The Court warned that "of most concern to the Court is the fact that, in order to hold an assignee liable under TILA, the TILA violation must be apparent on the face of the assignment documents." (*Id.* at 9). The Court further warned that "an assignee reviewing Jordan's RIC for violations of TILA would face different considerations than an assignee reviewing an RIC that identified a warranty issuer on the face of the RIC." (*Id.*). Specifically, a RIC which fails to disclose the correct amount paid may not be

"apparent on the face," while a RIC which fails to disclose the identity of the recipient of the fee may be "apparent on the face." Still, plaintiff did not amend her complaint accordingly. As this opinion will discuss at length, plaintiff's unamended allegation does not state a claim because the alleged violation did not "appear on the face of the disclosure statement." If she amended her pleadings as directed, the Court would have faced different considerations; indeed, the unalleged violation—for failure to disclose the identity of the fee recipient—may have been "apparent on the face of the disclosure statement."

**7.** While plaintiff submitted an "amended" complaint, her "amended" complaint contained nearly identical allegations as her initial complaint. Plaintiff only changed its phrasing. Plaintiff refused to assert a violation for failing to identify the party who received the extended warranty fee, as directed by the Court. Instead, she only asserted a violation for failing to disclose the *amount* paid to a third party. While plaintiff's brief referenced the second violation (failing to identify the third party), she merely stated that the second violation has no effect on the Court's analysis of the first violation (failing to disclose the amount paid to a third party). (Pl.Br. at 13–15).

ler—an "assignee" for TILA purposes.[8] An assignee, unlike a creditor, may be found liable only in limited circumstances.[9] *See* 15 U.S.C. § 1641(a).

Section 1641(a) governs assignee liability. It states that:

> any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.... For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to ... a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned.

15 U.S.C. § 1641(a). In short, an assignee may be liable only if the violation is "apparent on the face of the disclosure statement."

Therefore, at issue is whether the alleged TILA violation is "apparent on the face of the disclosure statement." [10] More specifically, the Court must determine whether the alleged violation—that the RIC falsely stated the amount paid to a third party—is apparent on the face of the disclosure statement submitted to the assignee, Chrysler. If it is not "apparent on the face" of the disclosure statement, the Court's analysis ends and it must find that the plaintiff has failed to state a claim against Chrysler. *See Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708–10 (11th Cir.1998); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692–95 (7th Cir.1998).

Plaintiff puts forward two arguments claiming Chrysler is liable as an assignee. Plaintiff first contends—whether or not the alleged violation is "apparent on the face" of the RIC—that Chrysler contractually assumed liability through a provision contained within the RIC. This provision, known as a Holder Notice, was included in the RIC pursuant to Federal Trade Commission ("FTC") regulations. Second, plaintiff contends that the alleged violation is, in fact, "apparent on the face" of the RIC. The Court discusses these arguments in turn.

At the outset, the Court notes that the Third Circuit has not addressed the questions presented. Nonetheless, several Circuit Courts of Appeals have addressed these questions and uniformly agree on their resolution. *See Green v. Levis Motors, Inc.*, 179 F.3d 286, 294–96 (5th Cir. 1999); *Ellis*, 160 F.3d at 708–10; *Taylor*, 150 F.3d at 692–95. As discussed below, the Court finds the reasoning of those decisions to be compelling.

### FTC Clause

In 1975, the Federal Trade Commission ("FTC") issued a regulation requiring sellers to include the following words on consumer credit contracts:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EX-

---

**8.** Plaintiff concedes as much. She states that "[a]lthough Chrysler was at all times the party advancing the money, the dealer's name appeared on the RIC as the creditor. Under TILA, that fact makes the dealer the creditor and Chrysler an assignee." (Pl.Br. at 15 n. 8).

**9.** Perhaps, plaintiff failed to sue the dealer or amend her pleadings in an attempt to certify a broad, nationwide class.

**10.** The Court need not delve into the merits of whether the RIC violated TILA. The Court assumes *arguendo* that the RIC violated TILA. Because the Court finds, *supra*, that the alleged violation is not "apparent on the face" of the disclosure statement, the Court cannot find Chrysler liable as an assignee. Thus, the Court need not unnecessarily determine whether the RIC contained TILA violations.

CEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2(a) ("FTC Holder Notice provision"). The RIC, as required by this regulation, contained the FTC Holder Notice provision. Plaintiff points to the inclusion of this provision in arguing that Chrysler assumed liability despite the limiting language of § 1641(a). Indeed, plaintiff argues that the FTC Holder Notice provision supersedes TILA's "apparent on the face" requirement.

Read alone, the FTC Holder Notice provision seems to subject Chrysler to liability. Plaintiff advocates such a reading. Yet, every Circuit which has addressed this issue has uniformly held that the FTC Holder Notice provision "cannot override the express language of TILA in which Congress specifically decided that assignee creditors will only be liable for TILA violations that are apparent on the face of the disclosure statements." *Ellis,* 160 F.3d at 709; *see also Green,* 179 F.3d at 294–96 (agreeing with *Taylor* and *Ellis* in holding that § 1641(a) trumps the FTC Holder Notice provision); *Taylor,* 150 F.3d at 692–95 (holding that § 1641(a) trumps the FTC Holder Notice provision); *see also Mayfield v. General Elec. Capital Corp.,* No. 97 CIV. 2786, 1999 WL 182586, at *5 (S.D.N.Y. Mar.31, 1999) ("[T]he FTC Holder Notice [provision] does not expand liability to include assignees because doing so would be contrary to the express provisions of 15 U.S.C. § 1641(a)."). This Court agrees with those well-reasoned opinions.

The Seventh Circuit reasoned that the FTC "Holder Notice [provision], even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law and must be read in light of other laws that modify its reach." *Taylor,* 150 F.3d at 693. Thus, in 1980, when Congress amended § 1641(a) to limit assignee liability to violations "apparent on the face of the disclosure statement," it "narrowed considerably the potential scope of assignee liability," in effect, "trump[ing] the

FTC'S Holder Notice." *Id.* at 692–93. Both the Fifth and Eleventh Circuits addressed the same issue and reached the same conclusion. *See Green,* 179 F.3d at 294–96; *Ellis,* 160 F.3d at 708–10; *see also Mayfield,* 1999 WL 182586, at *5.

■ As a result, in the instant case, in accord with the above cited decisions, Chrysler did not assume greater liability than § 1641(a)'s "apparent on the face" limitation. Indeed, § 1641(a) trumps the FTC Holder Notice provision. *See Green,* 179 F.3d at 294–96; *Ellis,* 160 F.3d at 708–10; *Taylor,* 150 F.3d at 693. Hence, Chrysler can only be liable if the alleged violation is, in fact, "apparent on the face of the disclosure document."

Still, plaintiff cites one case—*Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729 (3d Cir.1989)—in support of her argument that Chrysler assumed liability through the FTC Holder Notice provision. *Ballay,* however, is inapposite.

In *Ballay,* the Third Circuit examined an arbitration provision in a brokerage firm's customer agreements. The agreements, mirroring an SEC rule, prohibited brokerage firms from requiring their customers to arbitrate their federal securities law disputes. *Id.* at 731, Nevertheless, the brokerage firm moved to compel arbitration; the district court denied the motion. *Id.* at 731. While an appeal was pending, however, the SEC rule was rescinded. *Id.* at 733–34. Thereafter, the brokerage firm argued that the recission should be deemed to nullify the provision which prohibited the arbitration of securities law disputes. *Id.* at 734. The Third Circuit rejected this argument; it reasoned that the brokerage firm "cannot win relief from the specific language of its own contract simply because it claims not to have meant what it said." *Id.*

While the Court notes some similarity, *Ballay* is inapposite for at least two reasons. In *Ballay,* the court addressed the effect of a change which occurred after the parties entered into their agreement—

specifically, whether the recission of the rule altered the terms of the contract. In the instant case and the *Taylor* line of cases,[11] unlike *Ballay*, no regulatory change occurred after the plaintiff signed the contract— § 1641(a) and the FTC Holder Notice requirement were in force when plaintiff signed the RIC. Thus, according to the Circuits which addressed this precise issue, the Court must read the FTC Holder Notice "in light of the other laws that modify its reach" at the time the parties contracted. *Taylor*, 150 F.3d at 693; *see Green*, 179 F.3d at 295–97; *Ellis*, 160 F.3d at 709. Second, the instant case and the *Taylor* line of cases involved the effect of a federal statute upon a federal regulation. *Ballay* involved no such conflict. Instead, *Ballay* involved the subsequent change of a regulation.

For these reasons, the Court, in the context of the instant case, declines to extend *Ballay*'s reasoning; it is misplaced. Instead, the Court defers to the well-reasoned opinions of the Fifth, Seventh, and Eleventh Circuit Courts of Appeals.

Accordingly, the Court finds that plaintiff has failed to state a claim because Chrysler did not and could not assume liability through the FTC Holder Notice provision. Therefore, the Court may find for plaintiff only if the alleged violation was "apparent on the face of the disclosure statement." *See Green*, 179 F.3d at 294–96; *Ellis*, 160 F.3d at 708–10; *Taylor*, 150 F.3d at 692–95.

**Apparent on the Face of the Disclosure Statement**

Even if the FTC Holder Notice provision does not subject Chrysler to greater liability, plaintiff maintains that Chrysler is still liable. Plaintiff asserts that she stated a claim under § 1641(a) because the alleged violation was "apparent on the face

of the disclosure statement." She argues that this is so because (1) Chrysler possesses "other related loan documents showing the true cost of that particular warranty" and because (2) Chrysler "cut[s] the check for the dealer and warranty provider[.]" (Pl.Br. at 23). Thus, she concludes that any "comparison" of these documents and checks with the RIC would disclose the alleged violation.

Plaintiff's allegation fails to state a claim. Upon examining a similar argument, the Eleventh Circuit explained:

> Under the [plaintiff's] own argument, . . . we would need to resort to evidence or documents extraneous to the disclosure statement. This the plain language of the statute forbids us to do so. As the Seventh Circuit noted, such an interpretation of TILA would: "impose a duty of inquiry on financial institutions that serve as assignees. Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves."

*Ellis*, 160 F.3d at 709–10 (quoting *Taylor*, 150 F.3d at 694); *see also Green*. Again, the Circuits are uniform in their decisions.

In the instant case, for Chrysler to discover the alleged violation, it must necessarily "resort to evidence or documents extraneous to the disclosure statement." Indeed, it cannot discover the violation by viewing the disclosure documents—it must reference the checks and other documents. That being so, the alleged violation is "not apparent on the face of the disclosure documents." Accordingly, plaintiff's TILA claim must be dismissed for failure to state a claim upon which relief can be granted.[12]

---

**11.** The Court refers to the Fifth, Seventh, and Eleventh Circuit decisions concerning TILA assignee liability as the *Taylor* line of cases.

**12.** Plaintiff suggests that Chrysler, upon comparing the documents for its transaction with the dealer, had "actual knowledge" of the alleged violation. Assuming this is true,

plaintiff still fails to satisfy § 1641(a). Indeed, the scope of § 1641(a) is quite narrow. As noted above, the Court cannot consider documents extraneous to the disclosure statement. *See Green*, 179 F.3d at 294–96; *Ellis*, 160 F.3d at 708–10; *Taylor*, 150 F.3d at 692–95.

In closing, the Court notes that plaintiff may have survived this motion if she amended her pleadings, as the Court previously requested. The Court, in its prior opinion,

> require[d] plaintiff to clarify her theory of recovery because of the far-reaching impact the asserted theory and class may have on plaintiff's separate claims. Of most concern to the Court [was] the fact that, in order to hold an assignee liable under TILA, the TILA violation must be apparent on the face of the assignment documents, thus affording the assignee an opportunity to detect the violation before accepting the assignment. . . . [A]n assignee reviewing Jordan's RIC for violations of TILA would face different considerations than an assignee reviewing an RIC that identified a warranty issuer on the face of the RIC.

(Mar. 22 Opin. at 9). Thus, the Court highlighted a glaring deficiency in plaintiff's allegations—plaintiff's RIC did not include the name of the warranty issuer. Yet, plaintiff failed to allege this as a violation and refused to amend her complaint to contain such a violation. As already noted, plaintiff only alleged a violation for failing to disclose the amount given to a third party. As discussed above, because this alleged violation was not on the face of the RIC, the Court has concluded that it must dismiss the TILA claim. If, however, plaintiff simply amended her complaint to include a violation for failing to disclose the identity of the warranty provider, the Court may have found such a claim "apparent on the face" of the disclosure statement. Moreover, if plaintiff amended her complaint accordingly, she may have been able to adequately represent a more narrow and defined class.

Plaintiff's actions were, apparently, deliberate. Indeed, the Court believes that plaintiff failed to amend her pleadings or sue the dealer in an effort to create a large nationwide class. Having made these decisions, plaintiff has chosen her course and now must accept the consequences.

## II. The Pendant State Claims

In addition to her TILA claim, plaintiff has brought supplemental state law claims. The Court, however, concludes that it should not address these claims. 28 U.S.C. § 1367 states that "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."

■ Here, plaintiff's complaint asserts federal question jurisdiction through the TILA claim. It asserts supplemental jurisdiction, through 28 U.S.C. § 1367, over the state claims. Because the Court will dismiss the TILA claim, the Court declines to exercise continued jurisdiction over plaintiff's state law claims. *See, e.g., Ehrich v. B.A.T. Industries P.L.C.,* 964 F.Supp. 164, 167 (D.N.J.1997); *Freund v. Florio,* 795 F.Supp. 702, 710–11 (D.N.J. 1992). The Court will dismiss these claims without prejudice. This "dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties." *Freund,* 795 F.Supp. at 710–11. Because the statute of limitations does not appear to have expired on these claims, plaintiff may bring these claims in state court.

## CONCLUSION

For the above stated reasons, the Court will grant defendant's motion to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6). The Court will dismiss plaintiff's Truth in Lending Act claim with prejudice. The Court will dismiss plaintiff's supplemental state law claims without prejudice.