875 A.2d 290 (2005)
378 N.J. Super. 221
Paul PSENSKY, Individually and on behalf of All Class Members similarly situated, Plaintiff-Respondent,
v.
AMERICAN HONDA FINANCE CORPORATION, Defendant-Appellant, and
Island Honda, Inc., and Andrew Lippi, Individually, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 2005.
Decided June 15, 2005.
*291 William H. Hyatt, Jr., argued the cause for appellant (Kirkpatrick & Lockhart Nicholson Graham, attorneys, Newark; Mr. Hyatt and Kathryn E. Tagliareni, on the brief).
Ronald L. Lueddeke, Spring Lake, argued the cause for respondent.
Before Judges KESTIN, LEFELT and ALLEY.
The opinion of the court was delivered by
LEFELT, J.A.D.
Plaintiff Paul Psensky entered into a retail installment contract in 2002 with defendant automobile dealership, Island Honda, Inc., to purchase a 1998 Honda Civic. Island Honda assigned the contract to defendant American Honda Finance Corporation, a company which financed the vehicles sold by Island Honda. Plaintiff subsequently filed a class action against defendants, alleging among other claims that Island Honda violated the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, by misrepresenting and failing to disclose that it was charging a $215 registration and title fee that exceeded the amount actually paid to the Division of Motor Vehicles and by charging a $499 documentation preparation charge, in addition to a documentary tax of $29.94, that Island Honda failed to itemize as required by the pertinent State administrative regulations. Plaintiff claimed American Honda was liable for Island Honda's wrongdoing through the Federal Trade Commission (FTC) and the New Jersey Retail Installment *292 Sales Act holder doctrines, as well as the holder provisions contained in the parties' retail installment contract. American Honda moved for summary judgment to dismiss plaintiff's complaint, arguing that no active wrongdoing was alleged against it and the Truth In Lending Act (TILA), 15 U.S.C.A. § 1601 to 1667f, trumped the FTC Holder Rule, 16 C.F.R. § 433.2(a) (2005), and preempted New Jersey's retail installment sales holder statute, N.J.S.A. 17:16C-38.2, even though plaintiff did not allege that either Island or American Honda violated the TILA. The trial judge denied American Honda's summary judgment motion. We granted interlocutory review and now reverse.
This appeal concerns only the derivative liability of American Honda and not the direct liability of Island Honda and its principal, defendant Andrew Lippi. Focusing on derivative liability only, we commence our analysis by detailing the holder provisions that are pertinent to the derivative claims advanced against American Honda.
Essentially, these provisions all subject an assignee of a creditor's consumer loan to the claims and defenses that can be asserted against the creditor. The FTC Holder Rule requires that the following notice be given to consumers: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof...." 16 C.F.R. § 433.2(a). In similar fashion, New Jersey provides, in pertinent part, that "[a]ny subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction...." N.J.S.A. 17:16C-38.2. The retail installment contract signed by the parties in this case allowed an assignment by the seller but specified that the "[b]uyer agrees that if this Contract is assigned by the Seller, Assignee shall have all rights of the Seller under this Contract."
American Honda's argument that the TILA supersedes or preempts all of the various holder provisions is based on the TILA provision limiting assignee liability. In relevant part, TILA specifically permits "any civil action" or certain administrative proceedings for a TILA disclosure violation to be brought against an assignee of a creditor "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C.A. § 1641(a). Under this provision, Congress allows plaintiffs to sue consumer loan assignees for TILA violations only when the violation is facially apparent on the disclosure document.
The trial judge in rejecting American Honda's preemption arguments found dispositive Scott v. Mayflower Home Improvement Corp., 363 N.J.Super. 145, 831 A.2d 564 (Law Div.2001), and held that the TILA assignee defense provision "limits assignees' liabilities on only one set of claims, that is, those specified in TILA." Because plaintiff did not assert any TILA claim, the judge determined that the FTC Holder Rule still applied. The judge also concluded that American Honda, as an assignee, was not immunized from consumer fraud claims based on state law. We disagree with the breadth of the motion judge's conclusion for the following reasons.
The TILA requires that certain disclosures be made in loan documents and authorizes consumers to sue for violations of the statute. The TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit *293 terms available to him [or her]." 15 U.S.C.A. § 1601(a).
Congress amended the TILA in 1980 to narrow considerably the scope of assignee liability in consumer loan transactions. Compare 15 U.S.C.A. § 1641 (1979), with § 1641(a) (1980); Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 200 (3d Cir.2000) (citing the legislative history at S.Rep. No. 96-73, at 2-3, 96th Cong. 1st Sess. (1979), reprinted in 1980 U.S.Code Cong. & Admin.News 280, 281); Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 693 (7th Cir.1998), cert. denied, 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999). It was this 1980 amendment that limited the liability of voluntary assignees to violations "apparent on the face of the disclosure statement." 15 U.S.C.A. § 1641(a).
Under Article VI, Clause 2, of the United States Constitution, Congress may preempt state law "either by express provision, by implication, or by a conflict between federal and state law." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695, 704 (1995). With regard to the TILA, Congress has preempted all state laws that are "inconsistent with the provisions of [TILA] and then only to the extent of the inconsistency." 15 U.S.C.A. § 1610(a)(1); see also Regulation Z, 12 C.F.R. § 226.28(a)(1) (2005).
Thus, not all state laws are preempted by the TILA. TILA preempts only those state laws that are inconsistent with the TILA. State and federal laws are inconsistent when "compliance with both federal and state regulation is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675 (1982).
As pointed out by the federal court in Alexiou v. Brad Benson Mitsubishi, 127 F.Supp.2d 557, 564 (D.N.J.2000), New Jersey's holder law broadly subjects assignees to any liability claim that can be asserted against the automobile dealer. This broad potential liability conflicts with the congressional purpose of the TILA 1980 amendment to restrict assignee liability and erects a barrier to Congress's purpose to hold assignees responsible only for disclosure failures that can be observed on the face of the loan document. "It would be contrary to the goals of the TILA to hold an assignee liable under a state statute even though the assignee has been assigned a contract that appears perfectly compliant with the law on its face." Id. at 565.
If the state law were not preempted, an assignee who conducts business nationally "would be compelled to research the laws of all of the states to ensure that it is abiding by each and every law promulgated by the states." Ibid. That is the type of substantial burden that Congress intended to avoid by its 1980 TILA amendment. See also Pilgrim v. Metro Chrysler Plymouth Subaru, No. CIV.A.03-3219, 2005 WL 61454, at *1 (E.D.Pa. Jan. 11, 2005) (holding that the TILA barred claims against bank-assignee where plaintiff alleged violations of state and federal law but bank's liability was solely derivative as holder of financing documents); Vickers v. Interstate Dodge, 882 So.2d 1236, 1242-43 (La.Ct.App.2004) (without evidence that the forgery of plaintiff's initials was apparent on the face of the note, the assignee bank will not be liable).
Furthermore, the FTC Holder Rule, 16 C.F.R. § 433.2, which, as we have stated, places the assignee in the shoes of the seller with regard to "all claims and defenses *294 which the debtor could assert against the seller" is also in conflict with the TILA assignee liability provision. The FTC rule as an agency regulation, however, "cannot trump the TILA's [statutory] assignee liability mandates." Ramadan, supra, 229 F.3d at 202-03; see also Taylor, supra, 150 F.3d at 693. Instead, it is the TILA that supersedes the FTC Holder Rule. See Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 935 (7th Cir.1998).
The motion judge rejected American Honda's preemption argument by finding determinative the fact that plaintiff had not advanced any TILA claim against Island or American Honda. Indeed, we recognize that most of the cases supporting American Honda's preemption argument involve TILA claims asserted by plaintiffs. Therefore, even though plaintiff acknowledges that had he raised a TILA claim against American Honda, that claim would be inconsistent with the TILA assignee liability restriction and thus preempted, plaintiff argues before us that in the absence of such a claim, the state claims are unaffected by the TILA preemption.
However, the failure to assert a TILA claim does not preclude application of conflict preemption. See, e.g., R.F. v. Abbott Labs., 162 N.J. 596, 619-20, 745 A.2d 1174 (2000) (blood transfusion recipient's state law products claim of failure to warn against manufacturer of commercially-available HIV blood screening test which was used unsuccessfully to test blood at blood bank was impliedly preempted by FDA's unique regulation of test); Feldman v. Lederle Labs., 125 N.J. 117, 133-56, 592 A.2d 1176 (although plaintiff only brought state negligence and strict products liability claims, Court performed preemption analysis and found that federal law did not preempt state law liability of manufacturer for failure to warn that drug could cause tooth discoloration), cert. denied, 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992); Azar v. Prudential Ins. Co. of Am., 133 N.M. 669, 68 P.3d 909, 917, 920-23 (Ct.App.) (where plaintiffs filed only state-based claims, court considered possibility of TILA preemption but found no conflict between TILA and any state law requiring disclosure because TILA applied only to consumer credit transactions and not to insurance transactions involving a creditor-debtor relationship), cert. denied, 133 N.M. 539, 65 P.3d 1094 (2003).
In advancing the non-preemption argument, plaintiff, as did the trial court, relies on the Law Division opinion in Scott, supra, 363 N.J.Super. at 156, 831 A.2d 564, for the principle that the "TILA does not bar [plaintiff]... from relief under the FTC Holder Rule and the applicable New Jersey consumer protection statutes and regulations." The Scott court stated that "[n]othing in the Legislative history of the TILA and its amendments suggests that Congress intended to abolish the FTC Rule in cases in which the consumer's claim is brought under state rather than federal law." Id. at 155, 831 A.2d 564. The court concluded that "Congress did not intend to abrogate the FTC Holder Rule in cases in which the consumer's claim is not based on the TILA; nor did Congress intend to immunize assignees from consumer fraud claims under state law." Ibid.
The claims asserted in Scott, however, were more expansive than the claims asserted by plaintiff herein. The claims in Scott constituted allegations that went beyond the disclosure requirements of the TILA. For example, plaintiffs alleged the use of "unlicensed salespersons who targeted minority neighborhoods" for fraudulent home repair contracts, the cost of which were paid in installments and funded by home mortgages. Id. at 151, 831 *295 A.2d 564. "The contractor's work was done in a shoddy or incomplete manner often using poor quality materials." Id. at 152, 831 A.2d 564. "The contracts prepared by the salespersons specified the work in general terms but omitted the name, make, quality and model of the products and materials to be used." Id. at 151, 831 A.2d 564. Besides consumer fraud violations, plaintiffs also alleged violations of the New Jersey Home Repair Financing Act. Id. at 152, 831 A.2d 564. Thus, Scott included allegations of wrongdoing that went well beyond the TILA disclosure requirements.
As we have stated, the TILA preempts only state laws that conflict with the TILA. Many of the claims asserted in Scott are different from TILA claims and their enforcement would not conflict with the TILA's federal purpose. When the state seeks to protect interests different from those Congress intended to protect and advanced by the TILA, there would be no preemption. For example, if a consumer purchases a car that turns out to be a lemon, the consumer may assert lemon law rights against the assignee. Taylor, supra, 150 F.3d at 693. Requiring the assignee to answer a lemon law allegation has no connection with the provision of consumer credit.
As another example, should the automobile dealer intentionally misrepresent the vehicle's mileage, thereby violating the Odometer Act, 49 U.S.C.A. § 32705, the consumer may also sue the assignee. As the Odometer Act violation also has no direct connection with the provision of credit, it is not preempted by the TILA. Irby-Greene v. M.O.R., Inc., 79 F.Supp.2d 630, 634-36 (E.D.Va.2000); See also Simpson v. Anthony Auto Sales, Inc., 32 F.Supp.2d 405, 409 (W.D.La.1998).
Furthermore, when the assignee directly participates in the fraud, there is also no TILA bar to assignee liability. Jackson v. South Holland Dodge, Inc., 312 Ill.App.3d 158, 244 Ill.Dec. 835, 726 N.E.2d 1146, 1154-55 (2000), aff'd, 197 Ill.2d 39, 258 Ill.Dec. 79, 755 N.E.2d 462 (2001); see also Knapp v. Americredit Fin. Servs., Inc., 245 F.Supp.2d 841, 851-52 (S.D.W.Va.2003) (lender's liability predicated upon the direct involvement of lender's agent in the planning and execution of scheme involving false pay stubs, false downpayments, and an acquisition fee hidden in the vehicle price); cf. Pawlikowski v. Toyota Motor Credit Corp., 309 Ill.App.3d 550, 243 Ill.Dec. 1, 722 N.E.2d 767, 776, 777 (1999), appeal denied, 188 Ill.2d 567, 246 Ill.Dec. 125, 729 N.E.2d 498 (2000). Congress did not intend to immunize any assignee who actively participates in the wrong.
In the instant case, although a TILA claim was not alleged, plaintiff asserted misrepresentations caused by non-disclosure and failure to itemize. These are disclosure assertions that were related directly to the provision of consumer credit and would qualify as TILA claims. Failure to reveal the retention by a car dealer of any amount of a fee that is purportedly being paid to a third party is a violation of the TILA. 15 U.S.C.A. § 1638(a)(2)(B)(iii); Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356, 1361 (11th Cir.2000) (failure to reveal retention by a car dealer of part of the charge for an extended warranty violated TILA), overruled on other grounds by, Turner v. Beneficial Corp., 242 F.3d 1023 (11th Cir.2001); Green v. Levis Motors, Inc., 179 F.3d 286, 294-96 (5th Cir.) (failure to disclose retention by a car dealer of part of the licensing fee violated § 1638(a)(2)(B)(iii)), cert. denied, 528 U.S. 1020, 120 S.Ct. 528, 145 L.Ed.2d 409 (1999); Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir.1997) (failure to *296 reveal retention by a car dealer of part of the charge for an extended warranty violated § 1638(a)(2)(B)(iii)); see also Jordan v. Chrysler Credit Corp., 73 F.Supp.2d 469, 472-74 (D.N.J.1999).
The parties' retail installment contact also provided, pursuant to a rule of the Division of Consumer Affairs, that plaintiff had the "right to a written itemized price for each specific documentary service which is to be performed." See N.J.A.C. 13:45A-26B.2(a)(2)(iii). The record does not reveal whether plaintiff demanded itemization under this regulation. In any event, the TILA also requires the creditor to provide, upon request, an itemization of the amount financed, which included the documentation preparation fee in this case. 15 U.S.C.A. § 1638(a)(2)(B)(iii). Laying aside the merits of plaintiff's claim regarding the documentation fee, should it be determined that plaintiff did not request itemization under either the contract or the TILA, the alleged documentation fee disclosure defect is encompassed within the scope of the TILA. See Chem. Bank v. Mayo, 121 Misc.2d 781, 469 N.Y.S.2d 315, 317-19 (City Ct.1983) (dealing with the aggregation of registration fees with documentary fees).
Furthermore, there are no active wrongdoing allegations asserted against American Honda. The assignee was not a party to the contract and simply financed the transaction. It is not contended that American Honda participated in any way in the claimed wrongdoing of Island Honda, and the only wrongs asserted by plaintiff appear to be identical to claims that could have been asserted under the TILA. In these circumstances, whether or not plaintiff has plead a TILA claim, imposition of liability against American Honda conflicts with the intent of Congress to restrict assignee liability in consumer loans.
In failure to disclose situations, should an assignee, though exempt from liability under the TILA, be liable under state law such as the Consumer Fraud Act, "it would impose disclosure requirements on assignees beyond those mandated by federal law. This would frustrate the overarching reasons put forth by Congress in enacting the assignee exemption ... to narrow assignee liability, to make compliance easier for creditors, and to eliminate confusion as to the responsibilities of assignees." Jackson v. South Holland Dodge, Inc., 197 Ill.2d 39, 258 Ill.Dec. 79, 755 N.E.2d 462, 469 (2001).
Accordingly, we hold that American Honda's compliance with the TILA is a complete defense to the state claims being asserted against American Honda that are factually based upon TILA disclosure requirements even in the absence of a specific TILA claim in plaintiff's complaint. Id. at 469-70. To the extent that any part of Scott, supra, 363 N.J.Super. at 145, 831 A.2d 564 can be read as holding to the contrary, it is overruled.
We emphasize, once again, that the TILA does not provide complete immunization for assignees from Consumer Fraud or other state claims. Assignees are immunized only when New Jersey law is inconsistent with the TILA. Richardson v. Standard Guar. Ins. Co., 371 N.J.Super. 449, 479, 853 A.2d 955 (App.Div.2004). As we have explained above, a plaintiff would also be entitled to maintain a cause of action under the Consumer Fraud Act, for example, where the assignee's fraud was active and direct. Fraud committed by the assignee before the assignment of the loan would also be independent of and separate from the TILA assignee exemption and thus actionable. See Jackson, supra, 258 Ill.Dec. 79, 755 N.E.2d at 470-71.
*297 At oral argument, plaintiff argued that even assuming that the TILA limitation on liability applied, the documentary fee of $499 was improper on its face and therefore American Honda could be liable for this improper charge. The TILA specifically defines, however, "violation[s] apparent on the face of the disclosure statement." 15 U.S.C.A. § 1641(a). These include, "but [are] not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." Ibid. The TILA assignee limitation at § 1641 applies to "violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents." Taylor, supra, 150 F.3d at 694. It does not pertain to defects that could be determined by any special knowledge that a particular assignee might have or could acquire through reasonable inquiry or study of documents extraneous to the disclosure documents. See Green, supra, 179 F.3d at 294-95 (assignee could not be liable for dealer's misstatement of amount paid for state license fees); Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 709-10 (11th Cir.1998) (finance company could not be found liable for overstated charge to mechanic itemized on contract); Jordan, supra, 73 F.Supp.2d at 475-76. In this case, therefore, the $499 documentation fee was not a violation apparent on the face of the assigned documents.
In conclusion, we reverse the motion judge's denial of American Honda's summary judgment motion, and because plaintiff has not alleged any direct misconduct claims or other claims against American Honda that do not conflict with the purpose of the TILA assignee provision, we dismiss the allegations of plaintiff's complaint against American Honda. The dismissal is without prejudice to plaintiff's right to amend the complaint to advance any active wrongdoing or other similar wrongs that can be reasonably alleged against American Honda that do not conflict with the purpose of the TILA assignee liability restriction.
Reversed and remanded for further proceedings consistent with this decision.