[938 NYS2d 280]

Sixto Ramirez, Appellant, v National Cooperative Bank (NCB), Respondent, et al., Defendants.

First Department, December 6, 2011

APPEARANCES OF COUNSEL

*Lincoln Square Legal Services, Inc.*, New York City (*Marcella Silverman* and *Elizabeth Maresca* of counsel), for appellant.

*Lowey Danenberg Cohen & Hart, P.C.*, White Plains (*Peter D. St. Phillip, Jr.*, and *Sung-Min Lee* of counsel), for respondent.

**OPINION OF THE COURT**

CATTERSON, J.

The plaintiff's claims against an automobile dealership require us to examine the circumstances under which the federal Truth in Lending Act (15 USC § 1601 *et seq.*) (hereinafter referred to as TILA) preempts New York State law and the extent of TILA's assignee liability protection. Because the

plaintiff's allegations have nothing to do with the disclosure of credit terms required by TILA, the defendant assignee bank may be held derivatively liable for the dealership's alleged fraud and deceptive business practices.

The plaintiff in this case alleges that he was the victim of a "nefarious," illegal "scheme" by a car dealership to fraudulently induce him to purchase three overpriced cars that he could not afford. The plaintiff commenced this action on March 8, 2010 against the dealership (hereinafter referred to as Giuffre), Hyundai Finance, and National Cooperative Bank (hereinafter referred to as NCB) for, inter alia, fraud, fraud in the inducement, unconscionability, and violation of General Business Law § 349.

The plaintiff contends that Giuffre engaged in a scheme to entice consumers to the dealership with false promises of a cash prize or a free cruise. After three phone calls and a letter, the plaintiff, an uneducated Spanish-speaking Honduran immigrant on disability and food stamps, went to the dealership to collect what he believed was his prize. However, rather than collecting any prize, the plaintiff was induced by Giuffre's "fraudulent and unfair sales practices" to purchase three cars in seriatim, when he could afford none of them.

With regard to the second car, a Ford Escape, the plaintiff alleges that Giuffre misrepresented that the first car was irreparably damaged and that the plaintiff had to purchase the Escape. Giuffre showed the plaintiff a piece of paper showing lower monthly payments for the Escape that led him to believe that the Escape was cheaper than the first car. The plaintiff was then presented with paperwork, all in English, including the retail installment contract (hereinafter referred to as RIC), which he signed. The plaintiff was also told that he could reduce his payments by refinancing at a later date.

However, when the plaintiff returned to the dealership, Giuffre refused to refinance the transaction or take back the Escape. Instead, Giuffre sold the plaintiff a third car. Giuffre told the plaintiff to call the loan servicer to simply repossess the Escape and assured him that his credit would be unaffected. The plaintiff contends that he was damaged when, among other things, he paid an excessive price for the Escape, he lost the benefit of the Escape when it was repossessed, and his credit was damaged by his inability to pay the $23,041 deficiency billed by NCB.

These allegations, which at this stage must be accepted as true (*Salles v Chase Manhattan Bank*, 300 AD2d 226 [1st Dept

2002]), state claims for fraud, fraud in the inducement, unconscionability, and violation of General Business Law § 349. (*See e.g. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 205-206 [2004] ["a plaintiff must allege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff"]; *Meyercord v Curry*, 38 AD3d 315 [1st Dept 2007]; *Kaufman v Cohen*, 307 AD2d 113 [1st Dept 2003] [to state a cause of action for fraud, a plaintiff must allege that the defendant knowingly misrepresented a material fact, and that the plaintiff justifiably relied to his detriment].)

Defendant NCB is the assignee of Giuffre's rights in the RIC for the Ford Escape, the second of the three cars that the plaintiff was induced to purchase. The plaintiff claims that NCB is liable pursuant to 16 CFR 433.2 (hereinafter referred to as the Holder Rule) and Personal Property Law § 302 (9). The Holder Rule and Personal Property Law § 302 (9) preserve consumer claims and defenses by mandating that "[a]ny holder of [a] consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained."

By notice dated February 16, 2010, NCB moved to dismiss the complaint against it for failure to state a cause of action and on the grounds that the plaintiff's action is preempted by 15 USC § 1641 (a), a TILA provision that limits assignee liability to violations that are "apparent on the face of the disclosure statement." NCB contended that Congress amended this provision in 1980 to extend the scope of the assignee liability limitation to non-TILA violations subject to the Holder Rule. NCB argued that although "the [c]omplaint does not allege any TILA violation," the plaintiff's action must be dismissed simply because the "claims of wrongdoing" are not "apparent on the face of the disclosure document."

In its decision and order dated August 3, 2010, the motion court granted NCB's motion. While not explicitly finding that the plaintiff stated a TILA claim, the motion court dismissed on the grounds that the alleged "misrepresentations" are not "apparent on the face of the disclosure document." The motion court also agreed with NCB that "[s]everal federal courts have held that state causes of action alleging assignee liability are preempted as in conflict with the intent of Congress in passing Section 1641 (a)."

On appeal, the plaintiff correctly argues that the motion court erred because the limitation on assignee liability is appli-

cable only to TILA claims. Where the plaintiff brings a non-TILA claim under state law, an assignee may be derivatively liable pursuant to the Holder Rule and its New York analogue. As the plaintiff asserts, the plain language of the limitation on assignee liability restricts its application to violations of "this subchapter"—that is, TILA. (*See* 15 USC § 1641 [a].) Further, the plaintiff asserts that the 1980 amendment did not extend assignee protection, which had been in place since 1974, a year before the Holder Rule was promulgated, but merely relocated the provision to a different section of the code and added two examples of violations that are "apparent on the face of the disclosure statement."

■ Defendant NCB, apparently recognizing the cogency of the plaintiff's argument, changed course on appeal and now argues that the plaintiff alleges a "TILA-type" violation and therefore the TILA assignee liability limitation applies. For the reasons set forth below, this Court disagrees. The plaintiff does not allege a TILA or "TILA-type" violation. Therefore, the New York State law pursuant to which the plaintiff brought his claims is not preempted, TILA's assignee liability limitation is inapplicable, and NCB may be liable under federal and state Holder Rules.

In *Matter of People v Applied Card Sys., Inc.* (11 NY3d 105, 114 [2008], *cert denied sub nom. Cross Country Bank, Inc. v New York*, 555 US 1136 [2009]), a Court of Appeals decision addressing TILA preemption in the context of deceptive credit card solicitation schemes, the Court specifically distinguishes between allegations of "affirmative deception" and allegations "relate[d] to the disclosure of credit information," and provides clear guidelines for determining when TILA preempts state law. The Court held that TILA preempts "those state laws that relate to 'disclosure of information' in credit card applications and solicitations . . . not those that prevent fraud, deception and false advertising." (*Id.*) Although the Court in *Applied Card Sys.* analyzed TILA's preemption provision under section 1610 (e), which applies to credit and charge cards, the preemption provision at issue in this case uses identical language to limit preemption only to state laws "relating to the disclosure of information." (*See* 15 USC § 1610 [a] [1] [applying to closed end credit contracts such as RICs].) The Court concluded that TILA preempts a state law that "purport[s] to alter the format, content, and manner of the TILA-required disclosures" or "require[s] credit issuers to affirmatively dis-

close specific credit term information not embraced by TILA." (*Applied Card Sys.*, 11 NY3d at 114.)

TILA requires that a dealership's RIC disclose credit terms such as the amount financed, finance charge, annual percentage rate, total of payments, total sale price, and the number, amount, and due dates or period of payments to repay the total of payments. (*See generally* 15 USC § 1631 *et seq.*) In this case, the plaintiff claims that the RIC he signed for the Escape stated the credit terms accurately. Thus, the plaintiff in this case, as in *Applied Card Sys.*, " 'take[s] no issue' with the substance or sufficiency of . . . TILA disclosures." (11 NY3d at 116.)

The New York common law of fraud and General Business Law § 349 do not regulate disclosures in the RIC, nor, in this case, do they require alterations or additions to the RIC disclosure statement that would conflict with federal requirements. (*See e.g. Applied Card Sys.*, 11 NY3d at 117-118.) To the extent that this decision departs from the holding of *Psensky v American Honda Fin. Corp.* (378 NJ Super 221, 875 A2d 290 [2005]), relied upon by the defendant, we decline to follow *Psensky*.

■ Contrary to NCB's assertion, the plaintiff does not state a "paradigmatic TILA hidden finance charge claim" merely because he alleges that he was charged a grossly inflated price for the Escape. A hidden finance charge claim requires proof of a "causal connection" between the higher base price of the vehicle and the purchaser's status as a credit customer. (*Diaz v Paragon Motors of Woodside, Inc.*, 424 F Supp 2d 519, 530 [ED NY 2006]; *see Ringenback v Crabtree Cadillac-Oldsmobile, Inc.*, 99 F Supp 2d 199, 203 [D Conn 2000] [in determining whether a plaintiff is charged a hidden finance charge, factors including cost to the seller, profit from the sale, whether the seller distinguishes between cash and credit prices, and the percentage of the seller's cash and credit sales should be considered].) In this case, the plaintiff does not allege and there is no evidence supporting a connection between the inflated price of the Escape and his status *as a credit customer*.

Accordingly, the order of the Supreme Court, New York County (O. Peter Sherwood, J.), entered August 6, 2010, which, insofar as appealed from, granted defendant National Cooperative Bank's motion to dismiss the causes of action as against it alleging fraud, fraud in the inducement, unconscionability, and violation of General Business Law § 349, should be reversed, on the law, with costs, and the motion denied.

SAXE, J.P., SWEENY, FREEDMAN and MANZANET-DANIELS, JJ., concur.

Order Supreme Court, New York County, entered August 6, 2010, reversed, on the law, with costs, and the motion denied.